# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

### No. 12-56783

---

### DAVID TOURGEMAN,

#### Plaintiff - Appellant,

#### v.

### COLLINS FINANCIAL SERVICES, INC., DBA Precision Recovery Analytics, Inc., a Texas Corporation; COLLINS FINANCIAL SERVICES, USA, INC., DBA Precision Recovery Analytic International, Inc.; PARAGON WAY, INC., a Texas Corporation; NELSON & KENNARD, a Partnership,

#### Defendants-Appellees,
#### And
### DELL FINANCIAL SERVICES, LP.

#### Defendant.

---

#### Appeal from United States District Court
#### Southern District of California
#### The Honorable Cathy Ann Bencivengo
#### CV-08-01392 CAB (NLS)

---

### ANSWERING BRIEF OF APPELLEE NELSON & KENNARD

---

TOMIO B. NARITA (SBN 156576)
JEFFREY A. TOPOR (SBN 195545)
SIMMONDS & NARITA LLP
44 Montgomery St., Suite 3010
San Francisco, California 94104
Telephone: (415) 283-1000
Facsimile: (415) 352-2625
*Attorneys for Appellee*
*Nelson & Kennard*

## CORPORATE DISCLOSURE STATEMENT

The undersigned counsel for appellee Nelson & Kennard states appellee Nelson & Kennard is a California partnership.

DATED this 3rd day of May, 2013.

By   <u>s/Tomio B. Narita</u>
      Tomio B. Narita
      Simmonds & Narita LLP
      44 Montgomery Street, Suite 3010
      San Francisco, CA 94104

      Attorneys for Appellee Nelson & Kennard

i

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

THE ISSUES PRESENTED FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    I.    Tourgeman Enters Into An Online Financing Agreement
        For The Purchase Of A Dell Computer And Has It
        Shipped To San Diego. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    II.    Tourgeman Fails To Pay His Debt And Dell Sells
        His Account To Collins As Part Of A Portfolio Of
        Charged-Off Accounts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    III.    Paragon Way And Nelson & Kennard Receive No
        Response To Their Letters And Cannot Reach
        Tourgeman By Phone. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    IV.    Nelson & Kennard Files Suit Against Tourgeman.. . . . . . . . . . . . . 11

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    I.    STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    II.    THE FDCPA WAS PASSED TO PROHIBIT
        HARASSMENT AND ABUSE, NOT TO COMPENSATE
        PLAINTIFFS WHO WHERE NOT CONFUSED
        OR HARMED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    III.    THE DISTRICT COURT ERRED BY HOLDING THAT
        TOURGEMAN HAD STANDING TO SUE BASED
        UPON A COLLECTION LETTER HE TESTIFIED HE
        NEVER RECEIVED.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ii

IV.  THE DISTRICT COURT ERRED WHEN IT HELD
     THAT THE FDCPA CLAIMS BASED UPON THE LETTERS
     WERE NOT BARRED BY THE ONE-YEAR STATUTE OF
     LIMITATIONS............................................ 21

V.   THE DISTRICT COURT CORRECTLY HELD THAT
     THE MISIDENTIFICATION OF THE ORIGINAL
     CREDITOR IN THE LETTERS AND THE COMPLAINT
     WOULD NOT FRUSTRATE THE LEAST SOPHISTICATED
     DEBTOR'S ABILITY TO CHOOSE AN INTELLIGENT
     RESPONSE............................................... 23

          A.  The Challenged Communication Must Be Read As
              A Whole, From The Least Sophisticated Debtor's
              Perspective, Considering The Debtor's Knowledge
              Of The Account History............................ 23

          B.  The Misrepresentation Must Be Material: It Must
              Frustrate The Consumer's Ability To Intelligently
              Choose A Response............................... 27

          C.  The District Court Correctly Concluded That The
              Letter Was Not Materially Misleading. ............ 28

          D.  Tourgeman Has Failed To Establish That The
              Misidentification In The Letter Was Material........ 31

          E.  The District Court Correctly Concluded That The
              Complaint Was Not Materially Misleading.......... 38

VI.  THE DISTRICT COURT ERRED BY APPLYING THE
     "MEANINGFUL INVOLVEMENT" DOCTRINE, BECAUSE
     THE PLAIN LANGUAGE OF THE FDCPA REQUIRES ONLY
     THAT A COLLECTION LETTER MUST BE "FROM" AN
     ATTORNEY.............................................. 43

          A.  The FDCPA Neither Imposes Nor Implies A
              "Meaningful Involvement" Requirement. .......... 43

          B.  Nelson & Kennard Was Meaningfully Involved...... 47

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

CERTIFICATE OF COMPLIANCE PURSUANT TO FEDERAL RULES
OF APPELLATE  PROCEDURE 32(a)(7)(C) AND CIRCUIT RULE 32-1
FOR CASE NUMBER 12-56783. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

STATEMENT OF RELATED CASES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

iv

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American Bar Ass'n v. Federal Trade Comm'n*
430 F.3d 457 (D.C. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*American Title Ins. Co. v. Lacelaw Corp.*
861 F.2d 224 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Avila v. Rubin*
84 F.3d 222 (7th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45, 48, 50, 52

*Baker v. G.G. Servs. Corp.*
677 F.2d 775 (9th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Bedroc Ltd., LLC. v. United States*
541 U.S. 176 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Camacho v. Bridgeport Fin., Inc.*
430 F.3d 1078 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 36, 44, 45

*Campuzano-Burgos v. Midland Credit Mgmt., Inc.*
550 F.3d 294 (3d Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu*
626 F.3d 483 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*City of Los Angeles v. Lyons*
461 U.S. 95 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Clark v. Capital Credit & Collection Servs., Inc.*
460 F.3d 1162 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25, 28, 29

*Clomon v. Jackson*
988 F.2d 1314 (2d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45, 47, 48, 50

*Coalition for a Sustainable Delta v. McCamman*
725 F. Supp. 2d 1162  (E.D. Cal. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

v

*Doe v. Cutter Biological, Inc.*
971 F.2d 375 (9th Cir. 1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 51

*Donohue v. Quick Collect, Inc.*
592 F.3d 1027 (9th Cir. 2010).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Donatelli v. Warmbrodt*
2011 WL 2580442 (W.D. Pa. June 28, 2011).. . . . . . . . . . . . . . . . . . . . . . . . 52

*Dunlap v. Credit Protection Ass'n*
419 F.3d 1011 (9th Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Evon v. Law Offices of Sidney Mickell*
688 F.3d 1015 (9th Cir. 2012).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Federal Home Loan Mortgage Corp. v. Lamar*
503 F.3d 504 (6th Cir. 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Fox v. Citicorp Credit Servs., Inc.*
15 F.3d 1507 (9th Cir.1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44, 45

*Gearing v. Check Brokerage Corp.*
233 F.3d 469 (7th Cir. 2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Gladstone Realtors v. Village of Bellwood*
441 U.S. 91 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Gonzales v. Arrow Fin. Servs., LLC*
660 F.3d 1055 (9th Cir. 2011).. . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 31, 35

*Greco v. Trauner, Cohen & Thomas, L.L.P.*
412 F.3d 360 (2d Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Guerrero v. RJM Acquisitions LLC*
499 F.3d 926 (9th Cir. 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Hahn v. Triumph Partnerships LLC*
557 F.3d 755 (7th Cir. 2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Heintz v. Jenkins*
514 U.S. 291 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

vi

*Hickman v. Alpine Asset Mgmt. Grp. LLC*
2012 WL 4062694 (W.D. Mo. Sept. 14, 2012).. . . . . . . . . . . . . . . . . . . . . . . . 41, 42

*Jenkins v. Centurion Capital Corp.*
2007 U.S. Dist. LEXIS 85218 (N.D. Ill. Nov. 15, 2007). . . . . . . . . . . . . . . . . . 41

*Jerman v. Carlisle*
130 S. Ct. 1605 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Kennedy v. Allied Mut. Ins. Co.*
952 F.2d 262 (9ᵗʰ Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Knighten v. Palisades Collections, Inc.*
721 F. Supp. 2d 1261 (S.D. Fla. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Leis v. Flynt*
439 U.S. 438 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 21

*Mahon v. Credit Bureau of Placer County, Inc.*
171 F.3d 1197 (9th Cir. 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 44, 45

*Maloy v. Phillips*
64 F.3d 607 (11th Cir. 1995).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Mangum v. Action Collection Serv., Inc.*
575 F.3d 935 (9th Cir. 2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Manlapaz v. Unifund CCR Partners*
2009 U.S. Dist. LEXIS 85527 (N.D. Ill. Sept. 15, 2009). . . . . . . . . . . . . . . . . 41

*Masuda v. Thomas, Richards & Co.*
759 F. Supp. 1456  (C.D. Cal. 1991).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 50

*McCaskill v. SCI Mgmt. Corp.*
298 F.3d 677 (7th Cir. 2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Miller v. Clark County*
340 F.3d 959 (9th Cir. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

vii

*Miller v. Javitch, Block & Rathbone*
561 F.3d 588 (6th Cir. 2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

*Mitchell Eng'g v. City & Cty. Of San Francisco*
2010 U.S. Dist. Lexis 20782  (N.D. Cal. Feb. 2, 2012). . . . . . . . . . . . . . . . . . . .  35

*N.Y. State Nat'l Org. For Women v. Terry*
159 F.3d 86 (2d Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

*Naas v. Stolman*
130 F.3d 892 (9th Cir. 1997).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*Nelson v. City of Davis*
571 F.3d 924 (9th Cir. 2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  50

*Newman v. Checkrite Cal., Inc.*
912 F. Supp. 1354 (E.D. Cal. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  49, 50

*Nielsen v. Dickerson*
307 F.3d 623 (7th Cir. 2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  45, 49, 50

*Palmer v. Stassinos*
2009 WL 86705 (N.D. Cal. Jan. 9, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . .  49, 50

*Paul E. Iacono Structural Eng'r, Inc. v. Humphrey*
722 F.2d 435 (9th Cir. 1983).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  46

*Peter v. GC Servs., L.P.*
310 F.3d 344 (5th Cir. 2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

*Pressley v. Capital Credit and Collection*
760 F.2d 922 (9th Cir. 1985).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Proctor v. Vishay Intertech., Inc.*
584 F.3d 1204 (9th Cir. 2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Raines v. Byrd*
521 U.S. 811 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17, 21

*Randolph v. IMBS, Inc.*
368 F.3d 726 (7th Cir. 2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29, 36

*TRW Inc. v. Andrews*
534 U.S. 19 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Terran v. Kaplan*
109 F.3d 1428 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

*Tourgeman v. Collins Fin. Servs., Inc.*
2011 WL 3176453 (S.D. Cal. July 26, 2011). . . . . . . . . . . . . . . . . . . . . .  18, 22

*Tourgeman v. Collins Fin. Servs., Inc.*
2012 WL 3731807 (S.D. Cal. Aug. 29, 2012). . . . . . . . . . . . . . . . . .  28, 32, 28, 43

*Sea-Land Serv., Inc. v. Lozen Int'l, LLC*
285 F.3d 808 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  51

*Siam Numhong Prods. Co., LTD. v. Eastimpex*
866 F. Supp. 445 (N.D. Cal. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

*Simon v. Eastern K* 11 *y. Welfare Rights Org.*
426 U.S. 26 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17, 20

*Smith v. Transworld Sys., Inc.*
953 F.2d 1025 (6th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

*Stricklin v. First Nat'l Collection Bureau, Inc.*
2012 WL 1076679 (S.D. Ill. Mar. 30, 2012). . . . . . . . . . . . . . . . . . . . . .  30, 37, 43

*Summers v. Earth Island Inst.*
555 U.S. 488 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18, 20

*Swanson v. Southern Ore. Credit Serv., Inc.*
869 F.2d 1222 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23, 24, 25

*United States v. Bentson*
947 F.2d 1353 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

*United States v. Hayes*
515 U.S. 737 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

ix

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*
454 U.S. 464 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 20

*Wahl v. Midland Credit Mgmt., Inc.*
556 F.3d 643 (7th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Washington v. Confed. Bands & Tribes of Yakima Indian Nation*
439 U.S. 463 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Warth v. Seldin*
422 U.S. 490 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

## STATE CASE

*South Bay Bldg. Enters. v. Riviera Lend-Lease, Inc.*
72 Cal. App. 4th 1111 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

## FEDERAL STATUTES

Fair Debt Collection Practices Act
15 U.S.C. § 1692. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 18, 42
§ 1692b(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
§ 1692b(2-6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
§ 1692c. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
§ 1692d. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
§ 1692e. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
§ 1692e(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
§ 1692e(11). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
§ 1692f. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 46
§ 1692g. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 37
§ 1692g(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44, 46
§ 1692g(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 34, 36, 44
§ 1692g(a)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34
§ 1692g(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
§ 1692h. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
§ 1692j. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
§ 1692k. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
§ 1692k(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

§ 1692k(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21
§ 1692p. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
§ 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
§ 1367. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Federal Rule of Civil Procedure
Rule 30(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35
Rule 56(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

## STATE STATUTES

California Code Civil Procedure
§ 581(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  42

California Business & Professional Code
§ 17200. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

California Rosenthal Fair Debt Collection Practices Act
Cal. Civ. Code §§ 1788, *et seq*... . . . . . . . . . . . . . . . . . . . . . . . . . .  3
§ 1788.30(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

## OTHER AUTHORITIES

United States Constitution
Article III, § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

## <u>STATEMENT OF JURISDICTION</u>

The district court had jurisdiction pursuant to 15 U.S.C. § 1692k, under the Fair Debt Collection Practices Act ("FDCPA"), and under 28 U.S.C. § 1331, and had supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  Summary judgment was entered against appellant David Tourgeman and in favor of appellee Nelson & Kennard on August 29, 2012.  Judgment was entered against appellant and in favor of Collins Financial Services, Inc., Collins Financial Services USA, Inc. and Paragon Way, Inc. on September 21, 2012.

On September 28, 2012, appellant filed his notice of appeal from the district court's August 29, 2012 and September 21, 2012 judgments, as well as the district court's August 6, 2009, July 26, 2011, October 21, 2011 and April 17, 2012 orders. The Court of Appeals has jurisdiction over the district court's orders and judgments pursuant to 28 U.S.C. § 1291.

1

## <u>THE ISSUES PRESENTED FOR REVIEW</u>

1.     Did the district court err by holding that a consumer had suffered injury-in-fact and had standing to sue based on the contents of collection letters that he testified he never received?

2.     Did the district court err in ruling that the FDCPA claims based on the collection letters were not barred by the one-year statute of limitations?

3.     Did the district court correctly conclude that the least sophisticated debtor would not have been prevented from choosing an intelligent response to a letter sent by a law firm, and a lawsuit filed by the law firm, that misidentified the consumer's original creditor, where the letter and the lawsuit, when read as a whole, and considering the consumer's knowledge of the account history, clearly explained the consumer's options for responding?

4.     Did the district court err by holding that a collection letter is not "from an attorney" within the meaning of section 1692e(3) of the FDCPA unless the attorney was "meaningfully involved" in reviewing the client's file before sending the letter?

5.     Did the district court correctly conclude that section 1692e(3) of the FDCPA was satisfied where an attorney personally reviewed the debtor's file and decided that it was appropriate to send a collection letter?

### STATEMENT OF THE CASE

Appellant David Tourgeman commenced this action on July 31, 2008, filing an individual action against Collins Financial Services, Inc. ("Collins"), Nelson & Kennard, Dell Financial Services, L.P., DFS Acceptance, DFS Production, and American Investment Bank, N.A. ("AIB"). SER 905-914. Tourgeman asserted claims against Collins and Nelson & Kennard under the FDCPA, the California Fair Debt Collection Practices Act (the "Rosenthal Act"), Cal. Civ. Code §§ 1788, *et seq.*, and for invasion of privacy and negligence; as to the remaining defendants, he asserted only claims for invasion of privacy and negligence.

On April 6, 2009, the district court denied the motion for judgment on the pleadings of Collins and Nelson & Kennard, and granted Tourgeman's motion for leave to file a first amended complaint. SER 899-904. That same day, Tourgeman filed a first amended class action complaint ("FAC"), which, in addition to adding class allegations, added a new defendant, CIT Financial USA, Inc., and dropped defendants DFS Acceptance, DFS Production, and AIB. *See* District Court Docket No. 34.[1] As to Collins and Nelson & Kennard, the FAC re-asserted the existing claims under the FDCPA and the Rosenthal Act, and for negligence and invasion of privacy, and added a claim under California's Unfair Competition Law ("the UCL"), Cal. Bus. & Prof. Code § 17200. As to the remaining defendants, the FAC

---

[1] A copy of the district court's docket is available at SER 915-974.

3

dropped the invasion of privacy claim, re-asserted the claim for negligence and added a UCL claim.

On August 6, 2009, the district court granted in part and denied in part the motions of Collins and Nelson & Kennard to dismiss and to strike the FAC.  SER 850-898.  Tourgeman then filed a second amended class action complaint ("SAC") against the existing defendants, which dropped the Rosenthal Act claim against Nelson & Kennard, but otherwise maintained the previously-asserted claims.  *See* Docket No. 60.

On October 14, 2009, Collins and Nelson & Kennard moved for summary judgment.  SER 652-667, 734-849.  The district court subsequently granted in part and denied part Tourgeman's motion pursuant to Federal Rule of Civil Procedure 56(f), denied with prejudice the motion for summary judgment as to the question whether appellant had paid his Dell debt in full, and denied without prejudice the remainder of the summary judgment motion.  SER 646-651.

On November 29, 2010, after his unopposed motion for leave to file another amended complaint was granted, Tourgeman filed his third amended class action complaint ("TAC").  SER 624-645.  This new pleading added two new defendants: Collins Financial Services USA, Inc. and Paragon Way, Inc.,[2] and asserted classwide claims against all defendants under the UCL and for negligence and

---

[2]  Appellant previously dismissed, voluntarily, Defendant CIT Financial USA, Inc.  Docket Nos. 146, 148.

4

invasion of privacy; against both Collins entities and Paragon Way under the FDCPA and the Rosenthal Act; and against Nelson & Kennard under the FDCPA.

The Collins entities, Paragon Way and Nelson & Kennard moved to dismiss the TAC.  SER 547-623.  On July 26, 2011, the district court granted in part and denied in part the motions.  SER 432-448.  A motion for reconsideration filed by those same parties, SER 411-431, was denied on April 17, 2012, SER 393-408.

Meanwhile, on July 1, 2011, while the motion to dismiss the TAC was pending, Tourgeman, and the Collins entities, Paragon Way and Nelson & Kennard filed cross-motions for summary judgment.  SER 449-478, 540-541.  Following a hearing on March 28, 2012, those motions were "deem[ed] withdrawn without prejudice."  SER 409-410.

On July 13, 2012, Tourgeman moved for partial summary judgment, Docket No. 297, and Nelson & Kennard moved for summary judgment, SER 98-136.  On July 27, 2012, the Collins defendants and Nelson & Kennard opposed Tourgeman's partial summary judgment motion, SER 72-97, and Tourgeman opposed Nelson & Kennard's summary judgment motion, SER 34-66.  On August 23, 2012, Nelson & Kennard and Tourgeman filed their respective replies.  SER 1-33.  Oral argument was heard on August 10, 2012.  ER 027-077.

On August 29, 2012, the district court denied Tourgeman's motion for partial summary judgment and granted Nelson & Kennard's motion for summary judgment.  ER 011-026.  The district court also ordered Tourgeman to show cause

why the remaining claims against Collins Financial and Paragon Way should not be dismissed, in light of its ruling on the summary judgment motions. *Id.* Judgment was entered on August 29, 2012 in favor of Nelson & Kennard and against appellant. ER 010.

On September 19, 2012, in response to the district court's order to show cause, Tourgeman requested that the court "involuntarily dismiss" his claims against all of the remaining defendants for the "reasons given" in the district court's August 29, 2012 summary judgment order. Docket No. 350. On September 21, 2012, the district court dismissed defendants Collins Financial Services, Inc., Paragon Way, Inc. and Collins Financial Services USA, Inc., and entered judgment in their favor. ER 008-009. Tourgeman filed his notice of appeal on September 28, 2012. ER 001-007.

## STATEMENT OF FACTS

### I. Tourgeman Enters Into An Online Financing Agreement For The Purchase Of A Dell Computer And Has It Shipped To San Diego

In November 2001, while living in Mexico, Tourgeman purchased and financed a Dell computer online.  Because he did not think Dell would ship it to him in Mexico, he directed Dell to deliver it to his parents' house at 1872 Port Renwick, Chula Vista, California (the "Port Renwick address").  *See* SER 211-212, 214.  Tourgeman provided the Port Renwick address to Dell as part of his online financing application.  *See id*. at 220-221.[3]

### II. Tourgeman Fails To Pay His Debt And Dell Sells His Account To Collins As Part Of A Portfolio Of Charged-Off Accounts

Dell Financial Services, L.P. ("DFS") arranged to have Tourgeman's loan financed by CIT Online Bank ("CIT").  *See id.* at 544 (at ¶ 7), ER 145-150.  Like all similar loans, however, the identity of the originating bank is irrelevant to the consumer, because DFS takes title to the loan within two days, services the loan thereafter, and bears the risk of default.  *See* SER 543-544 (at ¶¶ 5-6, 11).

In April 2004, after Tourgeman failed to fully repay his loan, DFS charged-off the account, and in July 2006 sold it to Collins, with a portfolio of other unpaid

---

[3]  Later in his deposition, Tourgeman stated that "the contract was made in the U.S.," and that he bought the computer online while he was in the United States. He then equivocated briefly and said that he "might have" bought in online while in Mexico.  *See id.* at 222-223.

7

accounts, pursuant to an Account Purchase Agreement. *See id*. at 544-545 (at ¶¶ 8-10, 12). At the time of sale, based upon representations Dell made during due diligence and in the Account Purchase Agreement, and the data transmitted when the sale closed, Collins understood that Tourgeman was responsible for the entire unpaid balance on the account, and that the originator of his loan was AIB. *See id.* at 365-378; *id.* at 755-756 (at ¶¶ 3-8).

### III.    Paragon Way And Nelson & Kennard Receive No Response To Their Letters And Cannot Reach Tourgeman By Phone

Collins placed Tourgeman's account and the account data received from DFS with its affiliated company, Paragon Way, Inc., for collection. *See id.* at 735 (at ¶¶ 2-4). Paragon Way tried to call Tourgeman, but could not reach him. *See id.* at 233, 237.

On July 19, 2006, Paragon Way sent Tourgeman a letter addressed to the Port Renwick address – where he had lived previously and the computer had been shipped. *See id.* at 736 (at ¶ 5), 749. The letter identified the "Current Creditor" as Collins Financial Services, Inc. and included a line labeled "Description," which referenced "**Dell Computer Corporation**." *Id*. at 749. It notified Tourgeman he had the right to dispute the debt or any portion of it, and listed Paragon Way's address and a toll-free telephone number. *Id.* It also included a line stating what Collins believed - the "Original Creditor" was "American Investment Bank. N.A." *Id*. The letter was <u>not</u> returned to Paragon Way as undeliverable. *Id*. at 736 (at ¶

8

5). Paragon Way later referred the account to Nelson & Kennard for further collection efforts. *Id*. (at ¶ 8).[4]

Nelson & Kennard used the data supplied by Paragon Way to generate a letter to Tourgeman, which it mailed on January 17, 2007 to the J Street Address. *See id.* at 138-139 (at ¶¶ 4-5), 167. A partner of the law firm, Scott Kennard, testified that he signed the letter after he personally reviewed the firm's file relating to Tourgeman and determined it was appropriate to send the letter. *See id*. at 139 (at ¶ 5). The letter correctly identified the firm's client – the current creditor, Collins – and advised Tourgeman of his right to dispute the debt. *See id.* at 167. The letter did not refer to an "original creditor," but in the "Re:" line, the name "American Investment Bank, N.A." was listed, along with an account number, a current balance due, and a file number. *Id*. It listed the firm's phone number and address, and stated: "If you have any questions or wish to discuss this matter, please contact our office." *Id*. The letter was <u>not</u> returned to Nelson & Kennard as undeliverable. *Id*. at 139 (at ¶ 5).

---

[4] Paragon Way found another potential address for Tourgeman at 330 J Street, Unit 304, San Diego, CA 92101 (the "J Street Address"). *Id*. (at ¶ 6). This was his parents' condo, and Tourgeman testified that he "stayed there" between 2004 and early 2007. *See* SER 224. Paragon Way sent a letter dated September 6, 2006 to the J Street Address. *See id.* at 751. When it received no response, it sent another letter to the J Street Address, dated November 9, 2006. *See id*. at 736 (at ¶ 7), 753. Neither letter was returned as undeliverable. *See id.* at 736 (at ¶ 7).

9

Tourgeman testified that he never received any of these letters, or any other communications, from Collins, Paragon Way or Nelson & Kennard.  His testimony on this point could not be clearer:

Q.     So the first -- you said the first time that you heard about -- after 2003, that you heard about the unpaid obligation was about the time your parents were served with the lawsuit.  Correct?
A.     Correct.
Q.     Okay.  Prior to that, had you ever heard of a company called Collins Financial Services?
A.     Excuse me.  No.
Q.     And have you ever had any communication, written or oral, email, by any means with Collins Financial Services?
A.     No.
Q.     Have you ever heard of a company named Paragon Way, Incorporated?
A.     No.
Q.     Again, have you ever had any communication with a company called Paragon Way?
A.     Not that I know of.
Q.     So you never received any correspondence from Paragon Way?
A.     Not that I know of.
Q.     Do you know whether your parents received any correspondence from Paragon Way?
A.     Not that I know of.
Q.     Do you know whether your parents have ever had a telephone call with Paragon Way?
A.     Not that I could recall.
Q.     They never told you about one?
A.     They never told me, no.
Q.     Same question with respect to Collins Financial Services.
A.     Not that they've told me.

* * * * *

Q.     How about Nelson & Kennard?  Had you heard of them prior to being served with a lawsuit?
A.     No.
Q.     And I take it that you never received any correspondence from them prior to the -- learning about the lawsuit.

10

A.    No.

Q.    Never had a phone call with them?

A.    No.

SER 499-501.[5]

## IV.    Nelson & Kennard Files Suit Against Tourgeman

In mid-July 2007, a Nelson & Kennard employee drafted a summons and a complaint against Tourgeman and provided them to an attorney of the firm, Jonathan Ayers, for review.  Mr. Ayers reviewed the file consistent with his own practice and the firm's policies.  *See id.* at 766-767 (at ¶ 12).[6]  On August 2, 2007, Nelson & Kennard filed the complaint in San Diego Superior Court.  *See id.* at 141-142 (at ¶ 13), 179-188.  The complaint identified the plaintiff as "Collins Financial Services, Inc." and prayed for the sum of $1,145.93, plus prejudgement interest from the date of charge-off, April 19, 2004 to the present.  *Id*. at 179-180.[7]

---

[5]  Tourgeman also testified that when he was living in Mexico, he spoke daily with his mother, who would notify him if he had received mail that day. *See id.* at 822-824, 826-827.

[6]  The attorneys at Nelson & Kennard are actively involved in the collection lawsuits they file.  They regularly propound and respond to discovery, take depositions, file briefs, and attend mediations, "prove up" hearings and contested trials.  *See id.* at 262-265, 292-293.

[7]  Erin Towns of DFS confirmed the amount prayed for in the complaint was "the exact amount that Dell shows as due in his system from the exact date that was his charge-off date, as shown in Dell's system, the DFS system."  *Id.* at 250-254.

Attached to the complaint was an exemplar of a Loan Agreement relating to the "finance [of] your purchase of **a Dell computer** through **Dell Computer Corp. or its affiliates ("Dell")"** listing AIB as the creditor. *See id.* at 185-188 (emphasis added). At that time, Nelson & Kennard understood AIB was the original creditor on Tourgeman's loan. *See id*. at 143 (at ¶ 18), 303-304.[8]

Shortly after receiving the complaint, Tourgeman retained counsel, who began corresponding with Nelson & Kennard. *See id.* at 227-228. The collection complaint was subsequently dismissed. *See id.* at 142 (at ¶ 17), 632 (at ¶ 34). This action followed.

---

[8] Tourgeman suggested that an earlier entry in the firm's notes that references "DFS/CIT" was evidence that the firm was instructed to change the name of the original creditor. But Scott Kennard testified that this was not true. *See id.* at 143 (at ¶ 18), 305-308, 344-345. Consistent with Kennard's testimony, Howard Knauer (Paragon Way's President) confirmed that Paragon Way told Nelson & Kennard the original creditor on Tourgeman's loan was AIB, and that there was no evidence Paragon Way ever changed that information to indicate that the original creditor was CIT. *See id.* at 234-236, 238-244. Walt Collins understood the "DFS/CIT" reference in the notes indicated that Dell was still incorrectly reporting its tradeline on the Tourgeman account to the consumer reporting agencies. *See id.* at 389-390.

12

## SUMMARY OF ARGUMENT

Tourgeman contends that the January 17, 2007 letter Nelson & Kennard sent him and the collection complaint it later filed violated section 1692e of the FDCPA, because both documents incorrectly identified AIB instead of CIT as the original creditor on his Dell account.  When the letter and the complaint are read as a whole, in conjunction with other letters sent to Tourgeman, and in light of his knowledge of the entire account history  – as they must be – they are not materially false or misleading.  They would not frustrate a consumer's ability to intelligently choose a response.

Both documents correctly identify Collins as the current creditor, and accurately state the amount of the debt Collins claimed was due.  The letter informs the consumer of the options available – pay the debt, dispute the debt, or call with any questions – and where to contact Nelson & Kennard.  The summons explains the consumer's options and obligations for responding to the complaint.  Any consumer who read the complaint would know that Collins was seeking to collect an unpaid debt relating to a Dell computer.  They would know exactly how to respond.  The references to AIB in the letter and the complaint, rather than CIT, would not frustrate or impede that process.  CIT was Tourgeman's creditor for only two days before Dell took over his loan.  This explains why Tourgeman did not recall CIT and why he immediately knew the complaint related to the Dell loan that he had allegedly paid in full.  Only "material" misstatements violate the FDCPA, a

13

point Tourgeman never directly addresses, but cannot dispute. The district court correctly held that the reference to AIB was not material.

The Court need not address the merits of the claim relating to the letter, however, for two independent reasons. First, Tourgeman lacked standing to pursue claims based on the letter because he testified he never received it. Tourgeman testified repeatedly and unequivocally that he had absolutely no contact with any of the defendants, including Nelson & Kennard, until after his father notified him about the lawsuit against him. Tourgeman did not suffer injury-in-fact based on the letter and lacks standing to sue. The district court erred when it held otherwise.

Second, even if Tourgeman had received Nelson & Kennard's letter, his claim would be barred by the one-year statute of limitations, because he filed this lawsuit more than eighteen months after the letter was sent. The district court erred when it held that Tourgeman's claim was timely.

The district court also erred when it held that an attorney must be "meaningfully involved" in the client's file before sending a collection letter. The letter need only be "from an attorney," which it indisputably was. This Court should reject Tourgeman's invitation to graft a "meaningful involvement" requirement onto section 1692e(3) the FDCPA. If the requirement exists, it was satisfied when Mr. Kennard personally reviewed the file and decided it was appropriate to send the letter. The judgment should be affirmed.

14

# ARGUMENT

## I.     STANDARD OF REVIEW

This Court reviews de novo a district court's "grant or denial of summary judgment," as well as its "interpretation of the FDCPA." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1023-24 (9th Cir. 2012).[9]  The Court may affirm on any basis supported by the record.  *See, e.g., Proctor v. Vishay Intertech., Inc.*, 584 F.3d 1204, 1226 (9th Cir. 2009), citing *Washington v. Confed. Bands & Tribes of Yakima Indian Nation,* 439 U.S. 463, 477 n. 20 (1979) (stating that prevailing party is "free to defend its judgment on any ground properly raised below whether or not that ground was relied upon, rejected, or even considered by the District Court").

## II.     THE FDCPA WAS PASSED TO PROHIBIT HARASSMENT AND ABUSE, NOT TO COMPENSATE PLAINTIFFS WHO WHERE NOT CONFUSED OR HARMED

When Congress enacted the FDCPA, it sought to protect consumers from threats, harassment, abuse and other deceptive practices that might be utilized by unscrupulous debt collectors.  *See* 15 U.S.C. § 1692; *Pressley v. Capital Credit and*

---

[9]  Although Tourgeman also appealed from the district court's interlocutory orders, *see* ER 001-002, he has limited his arguments on appeal to that portion of the District Court's summary judgment order regarding his claims under section 1692e of the FDCPA, *see* AOB at 18, and has not set forth in his opening brief any arguments as to why the other orders or other portions of the summary judgment order were incorrect.  Accordingly, he has waived any challenges to those orders or other rulings.  *See TRW Inc. v. Andrews*, 534 U.S. 19, 34 (2001); *Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 485 (9th Cir. 2010).

*Collection*, 760 F.2d 922, 925 (9th Cir. 1985). As this Court has observed,

> The purpose of the FDCPA is to protect **vulnerable and unsophisticated** debtors from abuse, harassment and deceptive collection practices. . . . Congress was concerned with disruptive, threatening, and dishonest tactics. The Senate Report accompanying the Act cites practices such as 'threats of violence, telephone calls at unreasonable hours [and] misrepresentation of consumer's legal rights.' (Citation). **In other words, Congress seems to have contemplated the type of actions that would intimidate unsophisticated individuals and which, in the words of the Seventh Circuit, 'would likely disrupt a debtor's life.'** . . .

*Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 938-39 (9th Cir. 2007) (per curiam; emphasis added). The FDCPA was never intended to inhibit normal collection activity, nor was it designed to provide a ready vehicle for consumers to file frivolous claims. In fact, Congress specified that one purpose of the Act was to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged . . . ." 15 U.S.C. § 1692.

**III. THE DISTRICT COURT ERRED BY HOLDING THAT TOURGEMAN HAD STANDING TO SUE BASED UPON A COLLECTION LETTER HE TESTIFIED HE NEVER RECEIVED**

Tourgeman lived in Mexico when Paragon Way and Nelson & Kennard mailed the collection letters, and he testified he never received them. Despite this, the district court ruled he had standing to pursue claims based upon the letters. This was error.[10]

The "standing" doctrine ensures that only true "cases or controversies" are

_____

[10] The question of standing cannot be waived and may be raised at any time. *See United States v. Hayes*, 515 U.S. 737, 742 (1995).

16

allowed to proceed in federal court. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). Article III of the United States Constitution limits the judicial authority of the federal courts to "cases" and "controversies." U.S. Const. art. III, § 2; *see Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982) (existence of a "case" or "controversy" is a "bedrock requirement" of federal court jurisdiction).[11]

The "irreducible constitutional minimum" requirements of standing include proof that Tourgeman suffered "injury-in-fact" resulting from the letters – *i.e.*, "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. The "injury in fact" test for standing "requires more than an injury to a cognizable interest. **It requires that the party seeking review be himself among the injured.**" *Id.* at 563 (emphasis added); *see Raines v. Byrd*, 521 U.S. 811, 819 (1997) ("We have consistently stressed that a plaintiff's complaint must establish that he has a personal stake in the alleged dispute, **and that the alleged injury**

---

[11] *See also Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies."). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

17

**suffered is particularized as to him**.") (emphasis added).[12]

The district court reasoned that "whether the consumer received the letter is irrelevant" because sections 1692e and 1692f of the FDCPA "don't prohibit debt collectors from making false, deceptive, or misleading representations *to consumers* – they prohibit them from making such representations *at all*." *Tourgeman v. Collins Fin. Servs., Inc.*, 2011 WL 3176453, *4 (S.D. Cal. July 26, 2011) (emphasis in original).  The court explained that the Act applies whenever a "debt collector *attempts* to make an allegedly misleading representation directly to a consumer. . . ."  *Id*. at *5 (emphasis added).  This was error.

The FDCPA does not prohibit "attempted" false representations, nor does it regulate misstatements made in a vacuum.  A letter does not violate the FDCPA unless it impedes the consumer's ability to intelligently respond, and by definition, it cannot do so if the consumer never receives it.

---

[12]  *See also Warth*, 422 U.S. at 498 ("A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action . . . ."); *Valley Forge*, 454 U.S. at 473 (standing requirements prevent "the conversion of courts of the United States into judicial versions of college debating forums.").  Tourgeman's subsequent receipt of the state court complaint, months after the letters were mailed, does not give him standing to assert claims based on the letters.  *See Lujan*, 504 U.S. at 561; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (plaintiff "bears the burden of showing that he has standing for each type of relief sought."); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983) (plaintiff with standing to pursue damage claim based on police use of illegal choke hold lacked standing to seek injunction banning future use of same choke hold).

18

This Court has never held that a consumer has standing to sue under the FDCPA based upon a collection letter that was never received. The district court relied on *Guerrero*, 499 F.3d 926, which held that the FDCPA does not apply to communications directed to the consumer's lawyer. *Guerrero* does <u>not</u> hold that a consumer who never received a letter has standing to sue. To the contrary, *Guerrero* noted that the FDCPA was designed to "protect vulnerable and unsophisticated debtors from abuse, harassment, and deceptive collection practices," and to prohibit collection conduct that "would likely disrupt a debtor's life." *Id*. at 938-39. Consumers cannot be harassed, abused or deceived by letters they never received or read. Nor do they need protection from letters they first learn about when they are produced to their FDCPA litigation counsel.

The district court also relied on *Donohue v. Quick Collect, Inc*., 592 F.3d 1027 (9th Cir. 2010), and *Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197 (9th Cir. 1999). Neither case held a consumer has standing to sue based on a letter they never received. It was undisputed in *Donohue* that the state court complaint had been served directly on the debtor. *See* 592 F.3d at 1031-32. The consumers in *Mahon* did not sue based on the contents of a letter they had never received or read; the issue was whether the collector had satisfied the duty to validate the debt. The validation notice had been mailed, and the consumers failed

19

to overcome the presumption of receipt.  *See* 171 F.3d at 1202-03.[13]

Regardless of the breadth of the FDCPA, it cannot confer standing on a consumer, like Tourgeman, who has not suffered injury-in-fact.  Although Congress can enact statutes that provide consumers a new cause of action, Congress cannot erase Article III's minimum standing requirements.  *See Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) ("In no event, however, may Congress abrogate the Art. III minima:  A plaintiff must always have suffered a distinct and palpable injury to himself, that is likely to be redressed if the requested relief is granted.") (quotation marks omitted); *see also Summers*, 555 U.S. at 497 ("Unlike redressability, however, **the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute**.") (emphasis supplied).[14]

_____

[13]   *Baker v. G.G. Servs. Corp.*, 677 F.2d 775 (9th Cir. 1982) also does not hold that a consumer who testifies he did not receive a collection letter has standing to sue based on its contents.  *Baker* says a consumer has FDCPA standing even if he admits he owes the debt and fails to prove any actual damages.  There was no dispute in *Baker* that the consumer received the letter.  *See id.* at 780-81.

[14] *See also Valley Forge*, 454 U.S. at 488, n.24 ("Neither the Administrative Procedure Act, nor any other congressional enactment, can lower the threshold requirements of standing under Art. III."); *Simon*, 426 U.S. at 39 ("[B]roadening the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury.").

Tourgeman cannot have suffered an "invasion of a legally protected interest," *Lujan*, 504 U.S. at 560, because of a letter he never received. He is not "among the injured," *id.* at 563, nor can he show any injury "particularized as to him," *Raines*, 521 U.S. at 819, stemming from the letters. This Court should hold that he lacks standing to assert claims based on the letters.

## IV. THE DISTRICT COURT ERRED WHEN IT HELD THAT THE FDCPA CLAIMS BASED UPON THE LETTERS WERE NOT BARRED BY THE ONE-YEAR STATUTE OF LIMITATIONS

Any claims based on the collection letters mailed to Tourgeman should have been dismissed, because they are barred by the one-year statute of limitations. *See* 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by this title may be brought . . . within one year from the date on which the violation occurs."); Cal. Civ. Code § 1788.30(f) ("Any action under this section may be brought . . . within one year from the date of the occurrence of the violation."); *see also Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997) (statute of limitations based on filing of collection complaint begins to run when complaint filed); *Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir. 1995) (statute of limitations begins to run when letter mailed).

The Paragon Way letters were mailed on July 19, 2006, September 6, 2006, and November 9, 2006, and the Nelson & Kennard letter was mailed on January 17, 2007. *See* ER 151-53, 155. Tourgeman did not file this action until July 31, 2008, more than a eighteen months after the letters were mailed. *See* SER 905. Any

21

claims based on the letters were untimely.

The district court, however, ruled the claims were not time-barred because Tourgeman could not have "discovered" the letters until his father received the collection complaint in October 2007. "At that point, Plaintiff was on notice that Defendants were attempting to collect a debt that Plaintiff purportedly owed to AIB, and an investigation likely would have revealed – and did in fact reveal – Defendants' letters." *Tourgeman*, 2011 WL 3176453 at *6. This was error.

The district court relied on *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935 (9th Cir. 2009), but the "discovery" rule articulated there does not apply. In *Mangum*, the collector improperly disclosed information about the debt to her boss. Plaintiff had no way of discovering she had been injured by the improper disclosure until, during an investigative interview, her boss told her it had occurred. Plaintiff then sued within a year of the discovery. *See id*. at 938. Here, unlike *Mangum*, no injury ever occurred, because Tourgeman never received the letters. His lawyers "discovered" the letters when they were produced during this case. As previously discussed, a letter produced in litigation to an attorney cannot injure a consumer or provide him with standing.

In any event, the record does not support the district court's finding that Tourgeman could not have discovered the letters until after his parents informed him about the collection lawsuit. Tourgeman testified that he spoke to his mother daily when he was living in Mexico, and she would notify him if he had received

22

mail that day.  *See* SER 826.  Thus, he would have discovered the letters the same way he discovered the lawsuit had been filed – through his parents.  The claims based on the letters were untimely.

## V.   THE DISTRICT COURT CORRECTLY HELD THAT THE MISIDENTIFICATION OF THE ORIGINAL CREDITOR IN THE LETTERS AND THE COMPLAINT WOULD NOT FRUSTRATE THE LEAST SOPHISTICATED DEBTOR'S ABILITY TO CHOOSE AN INTELLIGENT RESPONSE

Tourgeman says Nelson & Kennard violated the FDCPA because it identified AIB, instead of CIT, as the original creditor in its January 17, 2007 collection letter and in the collection complaint.  When the letter and complaint are read as a whole and in context, as they must be, the reference to AIB was not a "material" misstatement.  It would not have frustrated the "least sophisticated debtor's" ability to intelligently choose how to respond to either document.

### A.   The Challenged Communication Must Be Read As A Whole, From The Least Sophisticated Debtor's Perspective, Considering The Debtor's Knowledge Of The Account History

This Court applies the "least sophisticated debtor" standard to determine whether a debt collector's communication complies with the FDCPA.  *Guerrero*, 499 F.3d at 934.  Under this objective standard, a communication violates the Act only if the least sophisticated debtor "would likely be misled by the [communication]."  *Swanson v. Southern Ore. Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1989) (per curiam).  Although objective, "the standard is lower than simply examining whether particular language would deceive or mislead a

23

reasonable debtor." *Id.* at 1227. The Court employs this standard "to ensure that even the least sophisticated debtor is able to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006). Where a collector's communication encourages a consumer to waive or ignore the consumer's rights under the FDCPA, this Court has found a violation of the Act. *See id.*, citing *Terran v. Kaplan*, 109 F.3d 1428, 1434 (9th Cir. 1997); *Swanson*, 869 F.2d at 1226.

Although forgiving, the "least sophisticated debtor" standard presumes a consumer will read collection communications "as a whole" and with some degree of care. *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1064 (9th Cir. 2011).[15] Thus, the language challenged by a consumer is not read in isolation, but

---

[15] *See also Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) ("The unsophisticated consumer isn't a dimwit. She may be uninformed, naive, and trusting, but she has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences.") (citations and internal quotations marks omitted); *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008) ("Even the least sophisticated debtor is bound to read collection notices in their entirety."); *Federal Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 510 (6th Cir. 2007) (standard assumes collection notice is read "in its entirety, carefully and with some elementary level of understanding."); *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005) ("[E]ven the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.") (citations and internal quotation marks omitted); *Peter v. GC Servs., L.P.*, 310 F.3d 344, 349 (5th Cir. 2002) ("When the

rather, must be considered in context. This context includes the "form and content" of the challenged communication, and, when appropriate, other communications. *See Swanson*, 869 F.2d at 1225-26 (discussing location, size and font of required language, contrasting with much larger size and emphasized nature of challenged language, and emphasizing that "the substance of the [challenged] language stands in threatening contradiction to the text of the [required language]); *Guerrero*, 499 F.3d at 934 (reviewing two letters in conjunction with each other and rejecting argument that letters "were sufficiently confusing so as to mislead least sophisticated debtor into believing [defendant] was attempting to collect on two accounts"; when letters were read together, it was clear defendant was attempting to collect only one account); *Dunlap v. Credit Protection Ass'n*, 419 F.3d 1011, 1012 (9th Cir. 2005) (per curiam) (considering letter's "main text" in rejecting consumer's suggested inference to be drawn from challenged language).

The Court also considers the unique circumstances faced by the consumer. For example, in *Clark*, after the consumer sent letters to a collection attorney, directing him to stop calling, the consumer called the attorney to discuss the debt. *See* 460 F.3d at 1167. When the attorney returned the consumer's call, the consumer claimed this violated the FDCPA, given her written cease-and-desist request. *See id.* at 1167-68.

---

letter is read as a whole" there was no violation of the Act).

This Court held that the consumer had waived any claim based on the return call. *See id.* at 1171. Significantly, the Court did not simply consider the collector's call in isolation. It evaluated that call in context, considered the prior communications, and, using the least sophisticated debtor standard, held that the consumer had waived her cease and desist directive. *See id.* at 1172.

In addition, even the "least sophisticated debtor" has an understanding of the account's history that must be considered. For example, in *Wahl*, the consumer argued the phrase "principal balance" was false, because it did not disclose this amount also included interest and late fees imposed by the original creditor. *See* 556 F.3d at 645. Recognizing that even the "unsophisticated consumer" is "capable of making basic logical deductions and inferences," the court rejected this argument. It held that the "unsophisticated consumer, **with a reasonable knowledge of her account's history**, would have little trouble concluding that the 'principal balance' included interest charged by [the original creditor]." *Id.* at 645-46 (internal quotations marks omitted; emphasis added). Thus, a challenged communication must be read in its entirety and in context, considering all of the surrounding circumstances, including the consumer's knowledge of the account history.[16]

---

[16] This Court cited *Wahl* with approval in *Donohue*. *See Donohue*, 592 F.3d at 1033. Tourgeman's suggestion that his knowledge of the identity of the original creditor was irrelevant, *see* AOB at 37-38, is thus not correct.

**B.     The Misrepresentation Must Be Material:  It Must Frustrate The Consumer's Ability To Intelligently Choose A Response**

A debt collector's communication will not violate the FDCPA simply because it contains a false or misleading statement.  An alleged false or misleading statement will violate the FDCPA only if the statement is "material."  *Donohue*, 592 F.3d at 1033-34.  A "material" misstatement must be "genuinely misleading" and one that "may frustrate the consumer's ability to intelligently choose his or her response" to the collector's communication.  *Id*. at 1034.  Tourgeman ignores this crucial issue.

*Donohue* reflects a consensus among this and other circuits[17] that rejects hyper-technical alleged violations of the FDCPA.  This is consistent with the remedial nature of the Act, because "immaterial statements, by definition, do not affect a consumer's ability to make intelligent decisions."  *Id.*  In *Donohue,* this Court noted that:

> In assessing FDCPA liability, **we are not concerned with mere technical falsehoods that mislead no one**, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response.  **Here, the statement in the Complaint did not undermine Donohue's ability to intelligently choose her action concerning her debt.**

*Id*. at 1034 (emphasis added).

Under *Donohue*, the Court must determine the available responses to a

---

[17]  *See Hahn v. Triumph Partnerships LLC*, 557 F.3d 755 (7th Cir. 2009); *Wahl*, 556 F.3d at 646; *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009).

communication and how, if at all, the allegedly confusing language prevented the consumer from intelligently choosing among those responses.  The district court properly applied these standards and correctly concluded that the misidentification of the original creditor in Nelson & Kennard's January 17, 2007 letter and the collection complaint was not material.

### C.     The District Court Correctly Concluded That The Letter Was Not Materially Misleading

In granting summary judgment for Nelson & Kennard on the claims relating to the January 17, 2007 letter, the district court properly considered the entire content of the letter, as well as the letters previously sent to Tourgeman by Paragon Way, and its "finding that the identity of the original creditor is immaterial under the circumstances of this case."  *Tourgeman v. Collins Fin. Servs., Inc.*, 2012 WL 3731807, *6 (S.D. Cal. Aug. 29, 2012).  In other words, the court charged the least sophisticated debtor with knowledge of the account history, including the nature of the creditor/debtor relationship and the efforts to collect the account.  This was proper.  *See Clark*, 460 F.3d at 1172; *Guerrero*, 499 F.3d at 934; *Wahl*, 556 F.3d at 645-46.

The account history shows that the misidentification of the original creditor in the Nelson & Kennard letter was immaterial.  Paragon Way sent Tourgeman

three letters in 2006 regarding the account.[18]  They all accurately identify Collins as the "current creditor" and list the exact amount of the debt Paragon Way was seeking to collect.  *See* ER 151-53.  The first two letters (dated July 19, 2006 and September 6, 2006) specifically state that the debt relates to "Dell Computer Corporation."  *See id.* at 151-52.  Read together, the logical inference to be drawn from the letters – even by the least sophisticated debtor – is that Paragon Way was seeking to collect an unpaid debt relating to a Dell computer.

Nor is Nelson & Kennard's letter, when read as a whole and in context, materially confusing or misleading.  The letter **did not** identify the "original creditor" on the loan.  *See* ER 155.  Instead, in the "Re:" line it states "AMERICAN INVESTMENT BANK, N.A.," and then correctly identifies the <u>current</u> creditor as "Collins Financial Services, Inc."  *Id.*  The letter states:  "If you

---

[18]  When Paragon Way sent its letters, it believed AIB was the original creditor.  At that time, Paragon Way was entitled to rely on the information Dell supplied concerning the original creditor's identity.  *See, e.g., Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992) ("The statute does not require an independent investigation of the debt referred for collection.").  Absent a consumer dispute, the collector may assume the information its client supplied is valid.  *See* 15 U.S.C. § 1692g(a)(3); *see also Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004) ("Courts do not impute to debt collectors other information that may be in creditors' files – for example, that debt has been paid or was bogus to start with.  This is why debt collectors send out notices informing debtors of their entitlement to require verification and to contest claims.  15 U.S.C. § 1692g.").  Even after receiving a dispute from the consumer, a collector is not required to investigate independently the accuracy of the creditor's claims.  *See Clark*, 460 F.3d at 1173-74.

29

request from this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor." *Id.* It provides the firm's phone number and address, and invites Tourgeman to contact the firm with any questions. *See id*.[19]

When read in light of the letters Paragon Way sent and the other letters Nelson & Kennard sent (which all referred to Collins), the least sophisticated debtor, whose knowledge of the account history must be considered, would understand that Nelson & Kennard was attempting to collect a debt on behalf of its client Collins related to the consumer's purchase of a Dell computer.[20]  The least sophisticated debtor would know the "intelligent choices" for responding were to pay the amount due; contact the firm to dispute the debt, request more information or to negotiate a settlement; or ignore the letter. *See, e.g., Stricklin v. First Nat'l Collection Bureau, Inc.*, 2012 WL 1076679, *7 (S.D. Ill. Mar. 30, 2012) (consumer who does not recognize original creditor can call or write to dispute debt or to

---

[19]  Nelson & Kennard sent Tourgeman four more letters, each of which referred to the firm's client (Collins), and which invited Tourgeman to contact the firm if he had questions or "wish[ed] to discuss this matter."  *See* ER 156-59.

[20]  At his deposition, Tourgeman was asked about the allegation in his original complaint, which claimed that he entered into an "oral financing agreement" with DFS.  When presented with the written loan agreement, he confirmed it reflected the terms of his oral agreement, notwithstanding that the document bore the CIT logo at the top of the first page and referred to "CIT Online Bank."  *See* SER 710-711; ER 145-50.  In other words, Tourgeman understood he was dealing with Dell, not CIT or AIB.

request "information regarding the original creditor"). The reference to AIB in the "Re:" line of the letter would not frustrate the least sophisticated debtor's ability to choose an intelligent response. The misstatement is not material.

### D. Tourgeman Has Failed To Establish That The Misidentification In The Letter Was Material

Notably absent from Tourgeman's brief is any discussion of materiality. The only time he discusses this Court's decision in *Donohue* is in his discussion of the standard of review. He argues that Paragon Way's misidentification of the original creditor would likely mislead the least sophisticated debtor, but never explains how the misidentification was material. None of the numerous cases he cites (*see* AOB at 23-24) held the misidentification of the original creditor was material. They either involve the misidentification of the <u>current</u> creditor – a statutorily-required disclosure – or they simply fail to address whether the misidentification was material.

Tourgeman discusses four possible reactions to the letters (*see* AOB at 25-27), but cites the wrong standard. The question is not whether the letter is misleading because "'it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" *Id.* at 27, quoting *Gonzales*, 660 F.3d at 1062. The question is whether the misstatement is material.[21]

---

[21] Tourgeman relies on Judge Sammartino's ruling denying the defendant's motion to dismiss the TAC and criticizes Judge Bencivengo for disregarding that ruling "simply because Judge Sammartino made her ruling in connection with a

Three of Tourgeman's four suggested reactions are wholly unreasonable, as they all involve the consumer ignoring the communication (based solely on the misidentification of the original creditor) rather than taking the reasonable step of calling or writing to Paragon Way to seek additional information, or at least to disputing the debt lest it be presumed valid. Only one of Tourgeman's suggestions – "Scenario four," the consumer recognizes the letter is about the unpaid loan for the Dell computer and arranges payment – is reasonable, and it confirms that the misidentification was immaterial, *i.e.,* it did not frustrate the consumer's ability to respond intelligently.

Tourgeman also maintains that the district court incorrectly found "that the creditor/debtor relationship was between [DFS] and the consumer." AOB at 27, citing *Tourgeman*, 2012 WL 3731807 at *5. He quotes multiple portions of the loan agreement, emphasizing the portions that refer to CIT. *See* AOB at 27-28, citing ER 145-46. He ignores, however, the repeated references to Dell Financial Services, Dell Computer Corp., DELL, Dell Sales Representative, Dell Sales Consultant, and Dell Computer Corporation that appear throughout the agreement. *See* ER 145-46. Despite these numerous references to Dell, Tourgeman argues that the least sophisticated debtor would be so confused by the subsequent letter that the

_____

motion to dismiss." AOB at 24. Even if, as Tourgeman asserts, the letters were available to the court when it ruled on the motion to dismiss, it is undisputed that the court could not and did not consider them in ruling on the motion.

32

consumer could not possibly choose how to respond.  Ultimately, the question is not which entity the consumer thought the original loan relationship was with.  The issue is whether a consumer who received a letter that referred to AIB, but who understood she had bought a computer from Dell, would have been so confused by the AIB reference that she would have been unable to choose an intelligent response to the letter.  In any event, the district court's conclusion that the letters were not materially false or misleading was amply supported by the record.  *See* SER 543-544 (at ¶¶5-7, 11); ER 333 (at 220:19-221:1, 222:15-223:25) (establishing that all loans in the portfolio sold to Collins – whether they were originated by AIB or by CIT – were purchased by Dell within two days of the date of origination, and Dell serviced all of the accounts).

Tourgeman says it is critical for the letters to correctly identify the original creditor.  *See* AOB at 31-33.[22]  To the contrary, Tourgeman cites section 1692g(a)(5), which does <u>not</u> require a debt collector to identify the original creditor in any communication.  It only requires the debt collector to advise the consumer of their right to get the name and address of the original creditor if they submit a

---

[22] The testimony of Messrs. Collins and Knauer that he cites is their opinion, not the law, and is not binding.  *See Miller v. Clark County*, 340 F.3d 959, 963 n.7 (9th Cir. 2003) (court is not "bound by a witness's opinion about the law").

33

written request for it. *See* 15 U.S.C. § 1692g(a)(5).[23]  Paragon Way did this, but Tourgeman never asked for the information.  The entire structure of the FDCPA reflects that Congress did not deem it material for the collector to include the name of the original creditor in the validation letter.  This is information Congress makes the consumer ask the collector for in writing.

Tourgeman contends that Walt Collins admitted that Paragon Way's letters violated the FDCPA.  This testimony cannot be a judicial admission, which is a formal admission in the pleadings that has the effect of withdrawing a fact from issue, dispensing wholly with the need for proof.  *See American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).  A judicial admission cannot be made regarding a question of law.  *See, e.g., N.Y. State Nat'l Org. For Women v. Terry*, 159 F.3d 86, 97 n. 7 (2d Cir. 1998) (judicial admissions "are statements of fact rather than legal arguments made to a court); *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 681-82 (7th Cir. 2002) (concurring opinion) (statement made at oral argument was statement of legal opinion and as such not a judicial admission binding on the parties or the court).  Mr. Collins's statement was his own (non-

---

[23]  If Congress had wanted debt collectors to provide the name of the original creditor to consumers, it would have said so.  The Court should not add words to the statute that are not there. *See, e.g., Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1081 (9th Cir. 2005) (rejecting argument that words "in writing" should be implied into section 1692g(a)(3): "'[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'").

binding) legal opinion, not a statement of fact.

Nor did the district court commit reversible error by ignoring Mr. Collins's testimony, because it was not given in his capacity as a Rule 30(b)(6) witness. The testimony in question was given during his individual deposition. *See* ER 377 (quoted testimony); ER 381 (commencement of Rule 30(b)(6) deposition).[24]

Noting that the district court pointed out that Paragon Way's letters "provided the recipient with the option to call" if the consumer had questions, Tourgeman argues that consumers are not obligated to seek clarification of confusing or misleading communications from debt collectors, citing *Gonzales*, 660 F.3d at 1062. *See* AOB at 36. Again, Tourgeman misses the point.

The question is whether, when the letter is read as a whole, the references to

---

[24] Even if Mr. Collins had stated his opinion during the 30(b)(6) portion of his deposition, Tourgeman's argument that the district court committed reversible error by ignoring it is unfounded. The Ninth Circuit has not decided whether 30(b)(6) testimony is judicially binding on a company to the exclusion of all other testimony. *See Coalition for a Sustainable Delta v. McCamman*, 725 F. Supp. 2d 1162, 1171-73 (E.D. Cal. 2010) ("The Ninth Circuit has yet to decide this issue. There is a marked divide in the case law."). The cases cited by Tourgeman do not support his position. *See Siam Numhong Prods. Co., LTD. v. Eastimpex*, 866 F. Supp. 445, 450 (N.D. Cal. 1994) (examining **factual** issue of whether judicial admission was made regarding existence of contract in context of statute of frauds); *Mitchell Eng'g v. City & Cty. Of San Francisco*, 2010 U.S. Dist. Lexis 20782, *4 (N.D. Cal. Feb. 2, 2012) (explaining purpose of Rule 30(b)(6) deposition in context of motion to compel); *United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir. 1991) (defense counsel's **factual statement** in closing argument in open court that his client did not claim to have filed valid tax returns was a binding judicial admission).

AIB were so confusing that the consumer could not intelligently choose among the possible responses. Calling a collector is one intelligent response to a collection letter, as this Court recognized in *Camacho,* when it held that a consumer can undo the presumption that a debt is valid (*see* 15 U.S.C. § 1692g(a)(3)) simply by calling a debt collector to dispute the debt. *See* 430 F.3d at 1080-82. Although a debtor may not be <u>required</u> to call the collector, a call is one intelligent response, and the references to AIB would not frustrate a consumer's ability to make it. In sum, there was nothing materially misleading about Paragon Way's letters.[25]

Regarding Nelson & Kennard's letter, Tourgeman attacks the district court's ruling on three fronts. First, he says the court was wrong to focus on the fact that the letter advised Tourgeman of his right to dispute the debt, arguing that consumers are not required to do so. Once again, the court was merely pointing out that the letter advised him, consistent with *Camacho,* of one of the possible intelligent responses to the letter – to dispute the debt if appropriate. The court did not say he was required to do so.[26]

---

[25] Tourgeman's reliance on the settlement between Dell and Collins is misguided. That Collins may have been concerned about potential "exposure to FDCPA violations" does not mean the FDCPA was violated. *See* AOB at 39.

[26] Tourgeman says "the impetus should be on the debt collector to get the information right." If that were the case, there would be no need for section 1692g(a)(3), which affords consumers the right to dispute the debt. *See, e.g., Randolph,* 368 F.3d at 729 ("Courts do not impute to debt collectors other information that may be in creditors' files – for example, that debt has been paid

Second, Tourgeman says the district court was wrong to rely on the fact that he could have called Nelson & Kennard if he had questions, claiming that "a consumer should not have to" do that. AOB at 42. Again, the district court did not hold that a consumer has do this, it simply noted that calling a collector with questions is one of the intelligent responses available to a consumer.

Third, Tourgeman says the district court was wrong to consider the Paragon Way letters. He cites no authority prohibiting the court from doing so. The court properly considered all of the circumstances and the consumer's knowledge of the account history in determining whether Nelson & Kennard's letter was materially misleading. *See Wahl*, 556 F.3d at 645; *Guerrero*, 499 F.3d at 934. There was nothing improper about the court's consideration of the prior letters.

When Nelson & Kennard's letter is read as a whole, and the account history is considered, the reference to AIB in the letter would not cause the least sophisticated debtor to act differently or limit the ability to make an intelligent choice about how to respond. *See Donohue*, 592 F.3d at 1034; *see also Stricklin*, 2012 WL 1076679 at **6-7 (summary judgment for collector where plaintiff presented no evidence of confusion as to identity of original creditor). Summary

---

or was bogus to start with. This is why debt collectors send out notices informing debtors of their entitlement to require verification and to contest claims. 15 U.S.C. § 1692g. Verification would be unnecessary if debt collectors were charged with the creditors' knowledge."). In essence, Tourgeman seeks to punish Nelson & Kennard for voluntarily providing information it was not required to provide – the name of the original creditor.

judgment for Nelson & Kennard was proper.

### E.     The District Court Correctly Concluded That The Complaint Was Not Materially Misleading

In granting summary judgment for Nelson & Kennard on Tourgeman's claim relating to the collection complaint, the district court considered "the seven preceding letters identifying Collins Financial as the current creditor, the first two of which expressly referenced Dell Computer Corp. as the description of the debt, and the fact that the agreement attached to the complaint contains the Dell logo." *Tourgeman*, 2012 WL 3731807 at *7. The court also observed that "the summons specifically sets forth the procedure and *options* for the recipient of the lawsuit to undertake." *Id.* (italics added). It concluded that the least sophisticated debtor "in this circumstance" would not "have behaved differently had the original creditor been correctly identified." *Id.* This was correct.

The summons and complaint did not contain any "materially" false or misleading statements. The plaintiff is correctly identified as "Collins Financial Services, Inc." – the company who "purchased" the "account which is the subject of this action." ER at 168-70. Attached is the exemplar of the "Loan Agreement" which makes clear that the debt relates to a Dell computer, referencing the "finance [of] **your purchase of a Dell computer through Dell Computer Corp. or its affiliates ("Dell")**." *Id.* at 175-76. It has a blank "Loan Number" and "**Dell Customer Number**" at the top, and says that AIB "through affiliation with **Dell**

38

**Financial Services, L.P.** is pleased to provide you with the following Loan Agreement." *Id*. It lists phone numbers for a "**Dell Sales Representative**" and "**Dell Customer Service**," and includes the Dell website and the Dell logo. *Id*.

Although the exemplar identifies "American Investment Bank, N.A." as the originator of the loan, *id.*, this statement was meaningless in the context of this case. All of the loans in this portfolio - whether originated by AIB or by CIT – were purchased by Dell within two days of the date of origination, and Dell serviced all of the accounts until they were sold to Collins. *See* SER at 542-544 (at ¶¶5-7, 11). For all intents and purposes, Tourgeman and all other debtors had a creditor relationship with Dell, not with AIB or CIT.

The least sophisticated debtor would understand the complaint contains allegations made on behalf of Collins, a company who purchased an unpaid loan for a Dell computer. The consumer would know the complaint was just the beginning of the legal process, and that the consumer's legal obligation to pay the debt, if any, would be determined by the court processes.

If the consumer believed she was not responsible for the debt, there was no confusion about how to respond. The summons served with the complaint – a standardized form approved for mandatory use by the California Judicial Council – explains the consumer's obligations and options for responding:

> **You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your**

39

**written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. . . . If you do not file your response on time, you may lose the case by default, and your wages, money and property may be taken without further warning from the court.**

ER 168.[27] On this record, the misidentification of the name of the creditor who had owned the loan for two days in 2001 would not be material to the litigation filed in 2007, *i.e.,* it would not frustrate the consumer's ability to intelligently choose how to respond to the lawsuit.

Tourgeman admits that, based on the attachment to the collection complaint, the least sophisticated debtor could likely conclude the lawsuit involved the purchase of a Dell computer. *See* AOB at 46. He then posits that the consumer might conclude Nelson & Kennard had sued the wrong person and decide to ignore the lawsuit. This suggested response is not among the intelligent ones that are available, because it assumes the least sophisticated debtor would ignore the plain language of the summons, which clearly informs the consumer to respond or risk a default judgment. It is unreasonable to assume a debtor would simply ignore the

---

[27] The summons further advises: "There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a non profit legal services program." *Id.* The summons provided information about how to locate such nonprofit groups. *Id.*

lawsuit because of any reference to AIB.

Next, Tourgeman argues that a consumer should not be forced "to hire a lawyer, or tackle the legal system herself, in order to dispute a false lawsuit." AOB at 48. Again, that is not the question. The question is whether the least sophisticated debtor, who is obligated to read a document in its entirety and with care, can read the one-page summons and understand the available options for responding. The consumer can, and the references in the complaint to AIB will not frustrate the ability to choose an intelligent response.[28]

Furthermore, the consumer can deny the complaint's allegations and request information as part of the discovery process during the litigation. *See Hickman v. Alpine Asset Mgmt. Grp. LLC*, 2012 WL 4062694, *6 (W.D. Mo. Sept. 14, 2012) ("A defendant in any lawsuit is entitled to request more information or details about a plaintiff's claim, either through formal pleadings challenging a complaint,

---

[28] Tourgeman's cases on this point are distinguishable. *Gearing v. Check Brokerage Corp.*, 233 F.3d 469 (7th Cir. 2000), held the defendant misrepresented itself as a subrogee, in violation of section 1692e. *Gearing* was based on a question of Illinois law and predates recent Seventh Circuit decisions on materiality. *See Wahl*, 556 F.3d 643. Though summary judgment was granted to the plaintiff in *Knighten v. Palisades Collections, Inc.*, 721 F. Supp. 2d 1261, 1271 (S.D. Fla. 2010), it was only granted because defendant failed to establish any procedures existed sufficient to claim a bona fide error defense on mistaken identity. The decisions in *Manlapaz v. Unifund CCR Partners*, 2009 U.S. Dist. LEXIS 85527 (N.D. Ill. Sept. 15, 2009), and *Jenkins v. Centurion Capital Corp.*, 2007 U.S. Dist. LEXIS 85218 (N.D. Ill. Nov. 15, 2007), involved motions to dismiss, where the facts alleged had to be taken as true, and are thus irrelevant.

or through discovery."). If the collection action had continued, Nelson & Kennard could have amended the complaint to correct the name of the original creditor. Leave to amend is liberally granted in California, and can be done at any time during the action, including at trial, in order to conform to proof. *See, e.g., South Bay Bldg. Enters. v. Riviera Lend-Lease*, *Inc*., 72 Cal. App. 4th 1111, 1124 (1999) (court erred by denying leave to amend to conform to proof at trial).

In other words, as the *Hickman* court reasoned, issues like misnomers in the complaint properly can be addressed and resolved in the state court. Nelson & Kennard had a good faith basis for alleging AIB was the original creditor, because its client told it that, and because Tourgeman never disputed the debt before the suit was filed. When it elected to dismiss the complaint filed for its client, the matter should have ended. *See* Cal. Code Civ. P. § 581(b).[29] Instead, Tourgeman and his counsel filed this case.

When the summons and complaint are read together, as a whole, and the earlier communications are considered, the reference to AIB in the complaint would not cause the least sophisticated debtor to act differently or limit the ability

_____

[29] *See also Hickman*, 2012 WL 4062694 at *7 ("Additionally, had Alpine alternatively discovered in the state court action, through the documents produced, that it lacked sufficient factual basis upon which to proceed in that action, Missouri state court rules would have allowed Alpine to dismiss the case, with or without prejudice. Such opportunity for dismissal supports that the filing of the collection suit in state court by Alpine was not unfair or an unconscionable means to collect or attempt to collect a debt.").

to make an intelligent choice about how to respond. *See Donohue*, 592 F.3d at 1034; *see also Stricklin*, 2012 WL 1076679 at \*\*6-7 (summary judgment for collector where plaintiff presented no evidence of confusion as to identity of original creditor). Summary judgment was properly granted.

## VI. THE DISTRICT COURT ERRED BY APPLYING THE "MEANINGFUL INVOLVEMENT" DOCTRINE, BECAUSE THE PLAIN LANGUAGE OF THE FDCPA REQUIRES ONLY THAT A COLLECTION LETTER MUST BE "FROM" AN ATTORNEY

The district court correctly granted summary judgment for Nelson & Kennard on the section 1692e(3) claim, holding that Mr. Kennard was "meaningfully involved" in the process of sending the January 17, 2007 letter to Tourgeman. *See Tourgeman*, 2012 WL 3731807 at \*6. The court, however, should never have reached that issue.

### A.     The FDCPA Neither Imposes Nor Implies A "Meaningful Involvement" Requirement

There is no "meaningful involvement" requirement for attorneys imposed by the plain language of the FDCPA, nor is there any legitimate basis for implying such a requirement. This Court should take this opportunity to reject the so-called "meaningful involvement" doctrine, and should hold that any communication that comes "from" an attorney complies with section 1692e(3) of the Act.

Section 1692e(3) prohibits the "false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3). It does not refer to "meaningful involvement" by an

attorney, nor does any other section of the FDCPA.  *See* 15 U.S.C. §§ 1692-1692p.
The plain and unambiguous language of section 1692e(3) provides that any
communication "from" an attorney complies with the statute.

"The preeminent canon of statutory interpretation requires us to presume that
[the] legislature says in a statute what it means and means in a statute what it says
there.  Thus, our inquiry begins with the statutory text, and ends there as well if the
text is unambiguous."  *Bedroc Ltd., LLC. v. United States*, 541 U.S. 176, 184
(2004) (sand and gravel were not "valuable minerals" within meaning of Pittman
Underground Water Act of 1919) (citations omitted).

The words  "meaningful involvement" should not be read into the plain
language of the FDCPA where Congress elected not to use them.  *See, e.g.,*
*Camacho*, 430 F.3d at 1081 (rejecting argument that words "in writing" should be
implied into section 1692g(a)(3)); *Mahon*, 171 F.3d at 1201 ("The plain language
of section 1692g(a) does not require that a Validation of Debt Notice must be
received by a debtor.  Instead, the plain language states that such a Notice need
only be sent to a debtor."); *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1512
(9th Cir.1994) (rejecting implied exemption for "purely legal" collection actions of
attorneys, such as filing suit in the wrong venue: "The plain language of the statute
unambiguously precludes any continued doctrine of special treatment for attorneys
under the FDCPA."); *see also Jerman v. Carlisle*, 130 S. Ct. 1605, 1624 (2010)
("This Court may not, however, read more into § 1692k(c) than the statutory

44

language naturally supports.").

Here, as in *Camacho*, *Mahon* and *Fox*, the Court's inquiry should begin – and end – with the statute's plain and unambiguous language.  Mr. Kennard is an attorney and the letter was indisputably "from" him, as opposed to from some other source.  No further inquiry was required or appropriate.

Tourgeman relies on cases from the Seventh and Second Circuit that have read beyond the plain language of section 1692e(3), holding that a collection letter is not truly "from" an attorney unless the attorney was "meaningfully involved" or "professionally involved" in a consumer's file before the letter was sent.[30]  The Court should not follow these decisions, as there is no basis for reading the FDCPA so expansively, in a manner that would allow judges, juries and consumers to second-guess the quantum and quality of the review that a collection attorney undertakes on behalf of the attorney's client.

None of the provisions in the FDCPA purport to regulate the manner in which a collection attorney should represent a client.[31]  Certain sections of the Act

---

[30] *See Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002); *Avila v. Rubin*, 84 F.3d 222, 228-29 (7th Cir. 1996); *Clomon v. Jackson*, 988 F.2d 1314, 1320-21 (2d Cir. 1993).

[31] Congress could not have intended for the original statute to be used to regulate the attorney-client relationship.  When it was originally passed, the FDCPA contained an express exemption for lawyers.  *See Heintz v. Jenkins*, 514 U.S. 291, 294-95 (1995) (original version of FDCPA provided that a "debt collector" did not include "an attorney-at-law collecting a debt as an attorney on

specify what a collector must <u>not</u> say or do when communicating with a consumer.

*See* 15 U.S.C. §§ 1692b(2-6), 1692c, 1692d, 1692e, 1692f, 1692h, 1692j.  Other

provisions – sections 1692b(1), 1692e(11), and 1692g(a) and (b) of the Act –

dictate what a collector must say to consumers or third parties when attempting to

collect debts.  The Act does not require attorneys to "meaningfully" or

"professionally" review their clients' files before communicating with a consumer.

The judiciary and the states, not Congress, regulate the professional

standards for the bar and oversee the conduct of attorneys when they interact with

clients.  *See, e.g., Leis v. Flynt*, 439 U.S. 438, 442 (1979) (lawyers had no property

interest in appearing *pro hac vice*:  "Since the founding of the Republic, the

licensing and regulation of lawyers has been left exclusively to the States and the

District of Columbia within their respective jurisdictions.  The States prescribe the

qualifications for admission to practice and the standards of professional conduct.

They also are responsible for the discipline of lawyers."); *Paul E. Iacono*

*Structural Eng'r, Inc. v. Humphrey*, 722 F.2d 435, 439 (9th Cir. 1983) (affirming

disqualification order: "[T]he regulation of lawyer conduct is the province of the

courts, not Congress.").  Thus, this Court should not conclude that Congress

intended for section 1692e(3) to be used to regulate the method by which an

attorney reviews a client's files.  *Cf. American Bar Ass'n v. Federal Trade*

―――――――――――――――

behalf of a client.").

46

*Comm'n*, 430 F.3d 457, 467 (D.C. Cir. 2005) (rejecting argument that Congress wanted the FTC to regulate attorneys through the Gramm-Leach Bliley Act: "[Congress] does not . . . hide elephants in mouseholes. (citation)").

If a creditor-client engages a law firm to send a collection letter to a consumer, the client and the lawyer must decide what steps the lawyer should take before that letter is mailed. The FDCPA simply does not regulate this process. Nelson & Kennard respectfully submits that this Court should expressly reject the "meaningful involvement" doctrine, and should hold that evidence that a collection letter was "from" a licensed attorney is sufficient to satisfy section 1692e(3) of the FDCPA.

## B.    Nelson & Kennard Was Meaningfully Involved

Even if the Court adopts the "meaningful involvement" doctrine, the judgment should be affirmed. Tourgeman needed to prove that no attorney from Nelson & Kennard ever reviewed his file, and that no attorney participated in the decision to send him the letter. The record shows that Mr. Kennard reviewed the file and determined it was appropriate to send the letter, so the claim fails.

This case is nothing like the "meaningful involvement" decisions upon which Tourgeman relies. The defendant in *Clomon* was a part-time general counsel of a collection agency that mailed letters to "approximately one million debtors each year" using a computerized mass-mailing system. Letters appeared on letterhead stating "P.D. Jackson, Attorney at Law, General Counsel, NCB

47

Collection Services" and bore Jackson's mechanically reproduced "signature."
*Clomon*, 988 F.2d at 1316-17. Jackson, however, never reviewed the letters and
never decided whether or when the agency should mail them. *See id*. The text of
the letters falsely suggested Jackson had personally reviewed Clomon's case and
had advised his client litigation was a real possibility. *See id.* at 1317.[32]

Similarly, Tourgeman cites *Avila,* where a collection agency sent letters on
attorney letterhead "'signed' with a mechanically reproduced facsimile" of the
attorney's signature. *See Avila,* 84 F.3d at 225. The agency mailed nearly 270,000
similar "attorney" letters each year – roughly 1062 each working day. *See id.* The
attorney, Rubin, had not personally prepared, signed or reviewed any of these
letters. *See id.* All of the letters threatened suit, but the Seventh Circuit observed it
was "unclear (but we think doubtful) whether [Rubin & Associates] litigate
anywhere," *id*. at 224, and noted that "Rubin is not personally or directly involved

---

[32] For example, the letters stated: "You have 30 days before **we take any
additional steps deemed appropriate** regarding your outstanding balance. . . .";
". . . **I am suggesting we take the appropriate measures provided under the
law** to further implement collection of your seriously past due account. . . .";
"Your account was referred to us **with instructions to pursue this matter to the
furthest extent we deem appropriate**. . . ."; "**Acting as General Counsel for
[my client], I have told them that they can lawfully undertake collection
activity** to collect your debt. . . ."; "Accordingly, the disposition of your account
has been scheduled for **immediate review and/or further action as deemed
appropriate** . . . ."; "Because of your failure to make any effort to pay your
lawful debt . . . **we may find it necessary to recommend to your creditor that
appropriate action be taken** to satisfy the debt." *Id.* (emphasis added).

48

in deciding when or to whom a dunning letter should be sent," *id*. at 228.

Tourgeman also relies on *Nielsen*, where the attorney was completely uninvolved in the letter process. In fact, the court held that the <u>creditor</u> client – Household Bank – had violated the FDCPA, because Household was the "true source" of the collection letters sent using the attorney's name. *See Nielsen,* 307 F.3d at 639. The defendant attorney "did not make the decision to send a letter to a debtor; Household did." *Id*. at 635.[33] The attorney had no "involvement with the file of any debtor slated to receive his form letter and played no meaningful role in the decision to send a debtor such a letter." *Id*.[34]

-----

[33] Household did not even give the attorney access to the debtors' files or access to the bank's account system. *See id*. at 636. The "attorney" letter told debtors to make payments directly to Household, and to call Household to discuss payment arrangements. *See id*. at 637. If any debtor called or wrote directly to the attorney, he immediately referred them to Household for handling. *See id*. The attorney did not have authority to negotiate payment plans or settlements. *See id*. He never filed suit for Household. *See id*. at 638.

[34] A few California district courts have found violations of section 1692e(3) using the "meaningful involvement" doctrine, but <u>only</u> where the attorney <u>never</u> reviewed the debtor's file, the <u>client</u> mailed the letter, and the attorney played <u>no</u> role in deciding whether or when to send any particular letter. *See Masuda v. Thomas, Richards & Co.*, 759 F. Supp. 1456, 1460 (C.D. Cal. 1991) (collection agency decided, without attorney's participation, when to send letters threatening suit on the attorney's letterhead; attorney never reviewed files and simply signed letters that were presented to him); *Newman v. Checkrite Cal., Inc*., 912 F. Supp. 1354, 1382-83 (E.D. Cal. 1995) (attorneys performed no review of debtor files and were not involved in decision to send letters using attorney's letterhead; letters were sent by agency based on a computer's decision); *Palmer v. Stassinos*, 2009 WL 86705, at *1-2 (N.D. Cal. Jan. 9, 2009) (client mailed all letters using

Here, by contrast, Scott Kennard testified he personally reviewed Tourgeman's file and determined it was appropriate to send him the initial demand letter. *See* SER at 139 (at ¶ 5). The firm does not send letters bearing an attorney's signature unless that attorney has reviewed the letter and has decided the letter is appropriate under the circumstances. *See id.* (at ¶ 6). Unlike the facts of *Clomon*, *Avila*, *Nielsen, Masuda*, *Newman* and *Palmer*, the <u>clients</u> of Nelson & Kennard have never prepared or mailed a collection letter using the firm's letterhead. *See id.* ¶ 7.

Tourgeman deposed Mr. Kennard for two days, but never asked him whether he reviewed the file before he signed and sent the letter. This was the key question, but Tourgeman apparently did not want to know the answer. Now Tourgeman argues the declaration is a "sham" and should be ignored. Not so.

The "sham affidavit" doctrine was created to "bar[] a plaintiff from creating a factual dispute with himself for the sole purpose of arguing that summary judgment is inappropriate until the dispute is settled." *Nelson v. City of Davis*, 571 F.3d 924, 927-28 (9th Cir. 2009). "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).

---

attorney's letterhead and it was not clear attorney reviewed any files before letters threatening suit were sent).

The "sham affidavit" rule, however, **does not preclude declarations which supplement or explain deposition testimony**, so long as the statement in the declaration does not directly contradict the deposition statements. *See, e.g., Nelson,* 571 F.3d at 928 ("the 'sham affidavit' rule does not preclude the non-moving party 'from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition'")*; Sea-Land Serv., Inc. v. Lozen Int'l, LLC*, 285 F.3d 808, 820 (9th Cir. 2002) (district court erred in excluding declaration that supplemented deposition testimony); *Doe v. Cutter Biological, Inc.,* 971 F.2d 375, 386 (9th Cir. 1992) (where witness' affidavit and deposition testimony were not in direct conflict, district court erred in excluding affidavit).

Tourgeman never asked Mr. Kennard if he reviewed the file before the letter was sent, and therefore cannot point to any deposition testimony that is in direct conflict with Mr. Kennard's declaration.  The district court correctly held that Tourgeman "has not proffered any evidence to contradict Mr. Kennard's statement that he reviewed the file and personally signed the demand letter . . . ."  ER 019. Mr. Kennard's declaration accurately states that he reviewed the file in this specific case before sending the letter.  This does not conflict with his deposition testimony, which was not tied to that specific letter and which explained that he "could" review the file in other circumstances depending on the level of trust with the

51

particular client.  There is no contradiction in the testimony.[35]

Tourgeman quibbles with the depth of Mr. Kennard's review, and faults him for not describing the review with more particularity.  But he cannot dispute the review actually occurred.  The Court should not second-guess the propriety of that review.  Even a minimal amount of attorney review is sufficient before a collection letter is sent.[36]  Summary judgment on the section 1692e(3) claim was proper.

## CONCLUSION

For each of the foregoing reasons, Nelson & Kennard submits that the judgment entered by the district court should be affirmed.

---

[35] Tourgeman argues that Mr. Kennard's declaration is "contradicted" by the account notes, which do not contain his initials on January 17, 2007.  There is no contradiction here.  Again, Tourgeman's counsel never asked Mr. Kennard about this during his deposition, so this argument is just pure speculation, not evidence.

[36] *See, e.g., Donatelli v. Warmbrodt*, 2011 WL 2580442, *5 (W.D. Pa. June 28, 2011) ("Warmbrodt testified that he reviewed the correspondence and the attached evidence of the debt, making sure that the two were consistent.  In his capacity as an attorney, he personally signed the document.  Warmbrodt's "skill and judgment" - though admittedly not much of either was required - were brought to bear on the letter sent to Donatelli. (Citation).  It is this personal - albeit minimal - attention on Warmbrodt's part that renders the holding in *Avila* inapplicable.").

Respectfully submitted,

SIMMONDS & NARITA LLP

Dated:  May 3, 2013                    By   s/Tomio B. Narita
                                           Tomio B. Narita
                                           Attorneys for Appellee
                                           Nelson & Kennard

53

**CERTIFICATE OF COMPLIANCE PURSUANT
TO FEDERAL RULES OF APPELLATE
PROCEDURE 32(a)(7)(C) AND CIRCUIT RULE 32-1
FOR CASE NUMBER 07-55326**

Pursuant to Federal Rules of Appellate Procedure, Rule 32 (a)(7)(C) and Ninth Circuit Rule 32-1, I certify that the attached brief is proportionately spaced, has a typeface of 14 points and contains 13,574 words.

Respectfully submitted,

SIMMONDS & NARITA LLP

Dated:  May 3, 2013                    By   s/Tomio B. Narita
                                            Tomio B. Narita
                                            Attorneys for Appellee
                                            Nelson & Kennard

54

## **STATEMENT OF RELATED CASES**

Pursuant to Circuit Rule 28-2.6, counsel for appellee Nelson & Kennard states that it is not aware of any related cases pending before this court.


By   <u>  s/Tomio B. Narita            </u>
        Tomio B. Narita

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, the Answering Brief of Appellee and Appellee's Supplemental Excerpts of Record were filed electronically using the Court ECF System.  I further certify that, as reflected in the electronic mail correspondence attached hereto, counsel for Appellant, Brett M. Weaver, who is a registered Appellate ECF user, has waived service of paper copies of the Answering Brief of Appellee and Appellee's Supplemental Excerpts of Record on his co-counsel, Daniel Murphy, who is not a registered Appellate ECF user.

Dated this 3rd day of May, 2013

<u>     s/Carmelita Ong          </u>
                    Carmelita Ong