No. 12-56783

=======================================

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

DAVID TOURGEMAN,

Plaintiff-Appellant,

v.

COLLINS FINANCIAL SERVICES, INC., DBA Precision Recovery Analytics, Inc.,
a Texas corporation, COLLINS FINANCIAL SERVICES USA, INC., DBA Precision
Recovery Analytic International, Inc., PARAGON WAY, INC., a Texas Corporation;
NELSON & KENNARD, a Partnership,

Defendants-Appellees,

and

DELL FINANCIAL SERVICES, L.P.
Defendant.

_____

Appeal from United States District Court
Southern District of California
The Honorable Cathy Ann Bencivengo
CV-08-01392 CAB (NLS)

_____

**NATIONAL ASSOCIATION OF RETAIL COLLECTION ATTORNEYS'** *AMICUS
CURIAE* **BRIEF IN SUPPORT OF DEFENDANTS-APPELLEES URGING
AFFIRMANCE**

_____

Donald S. Maurice, Jr.
MAURICE & NEEDLEMAN, P.C.
5 Walter E. Foran Blvd., Ste. 2007
Flemington, NJ 08822
dsm@mnlawpc.com
(908) 237-4550
(908) 237-4551 (fax)
*Counsel for Amicus Curiae*
*National Association of Retail Collection Attorneys*

=======================================

## TABLE OF CONTENTS

COPORATE DISCLOSURE STATEMENT ........................................................ i

STATEMENT PURSUANT TO FRAP 29(c)(5)(A)-(C) ........................................ ii

TABLE OF AUTHORITIES ................................................................ iii

I. STATEMENT OF IDENTITY AND INTEREST IN CASE ................................1

II. ARGUMENT ........................................................................3

A. THE FDCPA'S APPLICATION TO LAWYER PROFESSIONAL CONDUCT WAS NOT INTENDED BY CONGRESS AND LEADS TO ABSURD RESULTS ...........................................................................3

B. THE LEGISLATIVE HISTORY OF THE FDCPA DEMONSTRATES THAT CONGRESS DID NOT INTEND THE FDCPA TO REGULATE THE QUANTUM OF PROFESSIONAL JUDGMENT EXERCISED BY ATTORNEYS. .......................................................................5

C. MEANINGFUL INVOLVEMENT SHOULD BE REJECTED BECAUSE IT COMPELS ABSURD RESULTS WHEN APPLIED TO DEBT COLLECTING ATTORNEYS. ........................................................................8

1. "Meaningful Involvement" Produces Absurd Results within the Structure of the FDCPA Because It Permits the Consumer Financial Protection Bureau to Provide Opinions Defining an Attorney's "Appropriate" Exercise of Professional Judgment........................................................11

2. "Meaningful Involvement" Produces Absurd Results Because It Already Conflicts with Professional Standards Established by State Judiciaries and Opinions of the American Bar Association ......................................13

III. CONCLUSION ..................................................................15

CERTIFICATE OF COMPLIANCE PURSUANT TO FEDERAL RULES OF APPELLATE PROCEDURE 32(a)(7)(C) AND CIRCUIT RULE 32-1 FOR CASE NUMBER 07-55326 ......................................................16

STATEMENT OF RELATED CASES ..................................................17

CERTIFICATE OF SERVICE......................................................18

CONSENT RE ELECTRONIC SERVICE FROM MR. NARITA

CONSENT RE ELECTRONIC SERVICE FROM MR. WEAVER

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *Amicus Curiae* the National Association of Retail Collection Attorneys is a not-for-profit corporation and does not have any parent entities and there are no publicly held companies that own ten percent or more of its stock.

## STATEMENT PURSUANT TO FRAP 29(c)(5)(A)-(C)

Pursuant to FRAP 29(c)(5)(A)-(C):

(A) a party's counsel did not author the brief in whole or in part;

(B) a party or a party's counsel did not contribute money that was intended to fund preparing or submitting the brief; and

(C) no person — other than the *amicus curiae*, its members, or its counsel contributed money that was intended to fund preparing or submitting the brief.

## TABLE OF AUTHORITIES

**Cases**

*Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996) ................................................ 4, 11, 13

*Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993) ................................................13

*Comacho v. Bridgeport Financial, Inc.*, 430 F.3d 1078 (9th Cir. 2005) ...............10

*Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130 (2d Cir. 2010) ............................2

*Graziano v. Harrison*, 950 F.2d 107 (3d Cir. 1991) ...........................................10

*Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360 (2d Cir. 2005) . 13, 14

*Guerrero v. RJM Acquisitions, L.L.C.*, 499 F.3d 926 (9th Cir. 2007) ......................2

*Heintz v. Jenkins*, 514 U.S. 291 (1995) ........................................................... passim

*Jenkins v. Heintz*, 25 F.3d 536 (7th Cir. 1994) .......................................................8

*Jerman v. Carlisle*, 130 S.Ct. 1605 (2010) .............................................. 2, 8, 11, 14

*Leis v. Flynt*, 439 U.S. 438 (1979) .........................................................................7

*Marx v. General Revenue,* 133 S. Ct. 1166 (2013) .................................................2

*Riggs v. Prober & Raphael*, 681 F.3d 1097 (9th Cir. 2012) ...................................3

*Tourgeman v. Collins Fin. Servs.,* 2012 U.S. Dist. LEXIS 127815 (S.D. Cal. Aug. 29, 2012) ...........................................................................................3, 4

*Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457 (2001) ...........................................7

**Statutes**

15 U.S.C. § 1692c(c) ..............................................................................................9

15 U.S.C. § 1692e(3) ....................................................................................... passim

15 U.S.C. § 1692f ...................................................................................................8

15 U.S.C. § 1692g .................................................................................................10

15 U.S.C. § 1692k(e) ...................................................................................... 11, 14

15 U.S.C. §§1692 ...................................................................................................2

15 U.S.C.§ 1692(a) ................................................................................................3

**Other Authorities**

*Opinion 48 of the Committee on the Unauthorized Practice of Law* and *Opinion 725 of the Advisory Committee on Professional Ethics*, ___ N.J.L.J. ___. .....13

**Public Laws**

Pub. L. 95-109, § 803(6)(F), 91 Stat. 874 ............................................................5

Pub. L. 99-361, 100 Stat. 768 .............................................................................12

**Legislative History**

123 Cong. Rec. 10241 (1977) ................................................................................5

131 Cong. Rec. 10534 (1985) ................................................................................6

S. REP. 95-382, S. Rep. No. 382, 95TH Cong., 1ST Sess. 1977, 1977 U.S.C.C.A.N. 1695, 1696 (1977) ........................................................................5

The National Association of Retail Collection Attorneys respectfully submits this *amicus curiae* brief in support of Defendants-Appellees.

## I. STATEMENT OF IDENTITY AND INTEREST IN CASE.

The National Association of Retail Collection Attorneys ("NARCA") is a nationwide, not-for-profit trade association comprised of attorneys and law firms engaged in the practice of debt collection law.  NARCA members include more than 700 law firms located in all 50 states, all of whom must meet association standards designed to ensure experience and professionalism.  NARCA member attorneys are subject to the various Codes of Professional Ethics adopted in the jurisdictions where they are licensed to practice law. NARCA has adopted a Code of Professional Conduct and Ethics which imposes professional standards beyond the requirements of state codes of ethics and regulations that govern attorneys.

NARCA members are regularly retained by creditors to lawfully collect delinquent debts. In the exercise of their professional skills in the practice of debt collection law they are often subject to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692, et seq.  As the only national trade association dedicated solely to the needs of attorneys engaged in debt collection, NARCA has a significant interest in ensuring that the FDCPA is interpreted in a manner

consistent with its members' professional responsibilities to their clients, the courts, their adversaries and the general public.[1]

NARCA supports Appellee's position in this matter and urges this Court to find that the Fair Debt Collection Practices Act does not determine whether a lawyer has properly discharged her professional responsibilities in representing her client's interests. Put another way, whether a lawyer has devoted sufficient professional attention in considering her client's matter is a question that can only be resolved by the state judiciary which has licensed her to practice law.

NARCA makes this brief to alert the Court that when an attorney undertakes the representation of her client, the quantum of professional judgment she must exercise is a question that can only be resolved by the state judiciary which licensed the attorney.

---

[1] NARCA has previously participated as amicus curiae in other cases involving the interpretation of the FDCPA.  (*See, e.g.*, *Marx v. General Revenue,* 133 S. Ct. 1166 (2013); *Jerman v. Carlisle*, 130 S. Ct. 1605 (2010); *Heintz v. Jenkins*, 514 U.S. 291 (1995); *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130 (2d Cir. 2010); *Guerrero v. RJM Acquisitions, L.L.C.*, 499 F.3d 926 (9th Cir. 2007).

## II.    <u>ARGUMENT</u>

### A. THE FDCPA'S APPLICATION TO LAWYER PROFESSIONAL CONDUCT WAS NOT INTENDED BY CONGRESS AND LEADS TO ABSURD RESULTS.

In 1977, Congress passed the Fair Debt Collection Practices Act ("FDCPA" or the "Act") for the purpose of eliminating abusive, deceptive and unfair debt collection practices by third-party debt collectors. 15 U.S.C. § 1692(a). The FDCPA imposes strict liability upon debt collectors for violations. *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1099 (9th Cir. 2012).

Section 1692e(3) prohibits debt collectors from making "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3). The court below correctly found that Defendant-Appellee Nelson & Kennard did not violate § 1692e(3) when it sent Plaintiff-Appellant four letters, all signed by an attorney in the Appellee law firm, in an effort to collect an unpaid debt. *Tourgeman v. Collins Fin. Servs.,* 2012 U.S. Dist. LEXIS 127815, at **19-21 (S.D. Cal. Aug. 29, 2012).

But the court below reached this decision after determining that an attorney within Defendant-Appellee's law firm was "meaningfully involved" in the sending of the letters because he ". . . personally reviewed Mr. Tourgeman's

file, as was his practice, determined it was appropriate to send a demand letter based on the data before him, and personally signed the letter." *Id.* at *20.

Defendant-Appellee Nelson & Kennard correctly asserts that the so-called doctrine of "meaningful involvement" cannot be found within the FDCPA. The decisions from the Second and Seventh Circuits cited by Plaintiff-Appellant reason that the language of § 1692e(3) implies that a letter from an attorney licensed to practice law can only be from a "real attorney" exercising "true judgment." *See Avila v. Rubin*, 84 F.3d 222, 228 (7th Cir. 1996).

In enacting the FDCPA, Congress did not intend to regulate the level of professional attention an attorney must provide to a debt collection file before sending a letter. Neither the history, the structure, nor the plain wording of the FDCPA suggests that there exists a requirement of "meaningful involvement" or that licensed attorneys who are regulated by the Act, as opposed to non-attorney debt collectors who are also regulated by the Act, must demonstrate that they exercised a certain level of professional judgment in order to comply with the Act.

## B. THE LEGISLATIVE HISTORY OF THE FDCPA DEMONSTRATES THAT CONGRESS DID NOT INTEND THE FDCPA TO REGULATE THE QUANTUM OF PROFESSIONAL JUDGMENT EXERCISED BY ATTORNEYS.

Initially, attorneys at law representing clients were exempt from the FDCPA's coverage. Pub. L. 95-109, § 803(6)(F), 91 Stat. 874, 875; *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995).[2] When enacted, the FDCPA contained the same prohibitions in § 1692e(3) that we find today. In discussing the Act prior to passage, Congress sought to curb a number of debt collection abuses. The FDCPA's co-sponsor in the House explained:

> This legislation specifically prohibits, among other things, falsely representing oneself as an attorney, making harassing or threatening telephone calls or visits to anyone, publishing "deadbeat" lists, impersonating an attorney or a law enforcement officer . . . .

123 Cong. Rec. 10241 (1977).

In the Senate, it was noted that the Act would prohibit similar conduct:

> Collection abuse takes many forms, including obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.

---

[2] The exemption read: "(F) any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client;" Pub. L. 95-109, § 803(6)(F), attached hereto as Ex. "A."

5

S. REP. 95-382, S. Rep. No. 382, 95TH Cong., 1ST Sess. 1977, 1977
U.S.C.C.A.N. 1695, 1696 (1977).

Because attorneys were exempted from the Act, it is understandable that the
record makes no reference to the level of professional judgment, if any, an
attorney should exercise in collecting a debt.

In 1986, Congress repealed the exemption, but did not otherwise amend
the Act. Particularly, it did not amend § 1692e(3). *Heintz*, 514 U.S. at 294-295.
The sponsor of the House Bill repealing the attorney exemption described its
purpose as:

> . . . a fairness bill. It makes certain that **all debt collectors operate under
> the same set of rules**, a set of rules which debt collectors themselves
> have testified are easy to follow and do not restrict the business of ethical
> debt."

131 Cong. Rec. 10534 (1985) (emphasis added).

The only other remarks made in support of eliminating the exemption noted that
"[c]ertainly, a more level playing field would be accomplished for collectors
with the passage of H.R. 237, because all those engaging in third-party debt
collection would be **playing by the same rules**." *Id.* (emphasis added).

Congress intended that the repeal of the FDCPA's attorney exemption
would make all debt collectors -- attorneys and non-attorneys -- subject to the
"same set of rules." The so-called "meaningful involvement" doctrine is
contrary to this intent because it creates a different set of rules applicable only

to attorneys engaged in debt collection; namely, whether an attorney has exercised a requisite level of *professional* judgment, where no such "requirement" is imposed upon non-attorney third party debt collectors.

Aside from the legislative history expressing that the FDCPA is intended to apply the same set of rules to both attorneys and non-attorneys, Congress' silence as to the quantum of *professional* judgment an attorney should exercise in collecting debts demonstrates that it did not intend to impose such a rule. In the history of our jurisprudence, the licensing of attorneys and the standards of *professional* conduct by which they must abide has been left exclusively to the States. *Leis v. Flynt*, 439 U.S. 438, 442 (1979). The FDCPA, which originally expressly exempted attorneys from its purview, was not enacted to undo this tradition. Congress repealed the attorney exemption for the stated purpose of making all debt collectors, attorneys and non-attorneys alike, subject to the "same set of rules." It did not alter any substantive provision of the Act and certainly did not announce either in the amended Act or its legislative history, that the standard of *professional* judgment exercised by debt collection attorneys would no longer be determined by the States. "Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions -- it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

7

The National Association of Retail Collection Attorneys urges the rejection of the meaningful involvement doctrine as contrary to legislative intent.

## C. MEANINGFUL INVOLVEMENT SHOULD BE REJECTED BECAUSE IT COMPELS ABSURD RESULTS WHEN APPLIED TO DEBT COLLECTING ATTORNEYS.

The provisions of the FDCPA cannot be applied to attorney conduct in a manner that leads to absurd results. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1622 (2010).

The difficulties created by the application of the FDCPA to certain attorney conduct were first recognized by the Court in *Heintz v. Jenkins.* In *Heintz*, a law firm sent a letter to a debtor's attorney in an effort to settle a pending lawsuit arising from an unpaid automobile loan. The letter included a statement alleging the amount owed included $4,173 owed for insurance. *Heintz*, 514 U.S. at 293. The debtor sued the law firm under the FDCPA alleging that the letter's statement concerning the additional $4,173 was not authorized by her automobile loan (15 U.S.C. § 1692f(1)) and was also a false statement of the amount of the debt (§ 1692e(2)(a)). *Id.* The District Court dismissed the claim under Fed. R. Civ. P. 12(b)(6) finding that the FDCPA did not apply to lawyers engaged in litigation. *Id.* at 294. The Seventh Circuit reversed, finding that under the plain language of the FDCPA, attorneys who

use litigation to collect debts can fall within the definition of a "debt collector" under § 1692a(6). *Jenkins v. Heintz*, 25 F.3d 536, 539 (7th Cir. 1994).

In affirming the Seventh Circuit, the Supreme Court rejected the argument that although Congress repealed the attorney exemption, the FDCPA contained an implied exception for litigation conduct. *Heintz*, 514 U.S. at 295. However, it recognized that because the FDCPA originally exempted attorneys, when it was later amended to remove the exemption it did not "revisit the wording of the substantive provisions [of the Act]." *Id.* at 294-295. Because of its legislative history, when applying the FDCPA to attorney conduct, ". . . some awkwardness is understandable." *Heintz v. Jenkins*, 514 U.S. at 295.

The "awkwardness" did not warrant a broad exemption because it was possible to harmonize the conduct-regulating provisions of the FDCPA with litigation activities. *Id.* at 296-297. The Court accomplished this by recognizing the FDCPA contains "implied exceptions" to certain attorney conduct. *Id.* As an example, the Court considered, in dicta, § 1692c(c), which requires a debt collector to cease further debt collection communications if the debtor provides it with a written notice that he "refuses to pay" or wishes the debt collector to "cease further communication." *Id.* at 296. In the context of litigation, this could mean that a debtor who invokes § 1692c(c) could stop all further pleadings being directed at him. *Id.* But the Court found it unnecessary to read § 1692c(c)

in such an absurd way. Rather, it reasoned that the section can be read to imply that court-related documents can be communicated to the debtor, even though the section expressly allows only a communication concerning remedies the debt collector "may invoke" or "intends to invoke." *Id.* As the Court explained:

> We need not authoritatively interpret the Act's conduct-regulating provisions now, however. Rather, we rest our conclusions upon the fact that it is easier to read § 1692c(c) as containing some such additional, implicit, exception than to believe that Congress intended, silently and implicitly, to create a far broader exception, for all litigating attorneys, from the Act itself.

> *Id.*

The Court later explained in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 176 L. Ed. 2d 519 (2010) that the implied exceptions found in *Heintz* should be used to avoid "absurd results" when evaluating attorney conduct under the FDCPA. *Jerman*, concerned a lawyer's mistaken understanding of the content of a disclosure required to be provided to a consumer under 15 U.S.C. § 1692g(a). *Id.* at 1609. The *Jerman* Court held that the *bona fide* error exception to liability under § 1692k(c) does not extend to a lawyer's mistake of law in interpreting § 1692g(a).[3] *Id.* Although the bona fide

---

[3] *Jerman* originated from the Sixth Circuit, which had not yet ruled on whether all "disputes" under § 1692g(a) must be in writing. *Jerman,* 130 S. Ct. at 1610, n. 2. The attorney adopted the Third Circuit's interpretation from *Graziano v. Harrison*, 950 F.2d 107, 112 (3d Cir. 1991), which held every consumer's dispute § 1692g must be in writing. The District Court in *Jerman* rejected the Third Circuit's interpretation and instead followed the reasoning from *Camacho v. Bridgeport*

error defense was not available to the attorney for his mistake of law, the Court recognized that the defense was not an attorney's "sole recourse to avoid potential liability." Id., at 1621-1622. It noted that *Heintz* found that the FDCPA's "conduct regulating provisions" should not be applied in such a way ". . . to compel absurd results when applied to debt collecting attorneys." *Jerman*, 130 S. Ct. at 1622. Unfortunately for the law firm in *Jerman*, the Court was not persuaded that its imposition of liability upon attorneys for their mistaken interpretation of the FDCPA produced an absurd result. *Id.* at 1624.

1.  **"Meaningful Involvement" Produces Absurd Results within the Structure of the FDCPA Because It Permits the Consumer Financial Protection Bureau to Provide Opinions Defining an Attorney's "Appropriate" Exercise of Professional Judgment.**

The concept of "meaningful involvement," does lead to absurd results when it is applied to the regulatory scheme of the FDCPA. Meaningful involvement concerns itself with the quantum of professional judgment an attorney has exercised in deciding whether to send a debt collection letter. *See Avila v. Rubin*, 84 F.3d at 229. If an attorney has not exercised the requisite level of professional judgment, the doctrine imposes strict liability under the Act. *Id.*

---

*Financial, Inc.*, 430 F.3d 1078, 1080-1082 (9th Cir. 2005), which found that not all consumer disputes under § 1692g are required to be "in writing." *Id.*

11

However, a debt collector may avoid liability under the FDCPA if she acts in good faith with an advisory opinion of the Consumer Financial Protection Bureau ("CFPB"). 15 U.S.C. § 1692k(e). If the concept of meaningful involvement exists as part of the FDCPA, then an attorney seeking to avoid liability could seek an advisory opinion from the CFPB defining the level of *professional* judgment she should exercise in sending a debt collection letter.[4]

The Act's legislative history does not suggest that the CFPB or any other federal agency would have the authority to opine on the appropriate level of professional judgment an attorney must exercise. When the FDCPA was enacted it contained the same "good faith compliance" protection provided by § 1692k(e) today.[5] When the Act was amended in 1986 to remove the attorney exemption, § 1692k(e) was not amended. Pub. L. 99-361, 100 Stat. 768.

The concept of "meaningful involvement" cannot exist within the structure of the FDCPA. It is difficult to believe that when Congress removed the attorney exemption in 1986 so that non-attorneys and attorneys "play by the same set of rules," it really meant that attorneys are subject to a different standard of care than non-attorneys under § 1692e(3). It is absurd to believe that

---

[4] Section 1692k was amended July 21, 2010 by Pub. L. 111-203, Title X, Subtitle H, § 1089(1) substituting the CFPB for the Federal Trade Commission.

[5] As noted in footnote 5, the opinion would have then been provided by the Federal Trade Commission.

the same 1986 amendment evidences Congressional intent authorizing the CFPB (or the Federal Trade Commission) to issue opinions concerning attorney professional judgment.

### 2. "Meaningful Involvement" Produces Absurd Results Because It Already Conflicts with Professional Standards Established by State Judiciaries and Opinions of the American Bar Association.

The Seventh Circuit describes "meaningful involvement" as the principal that ". . . an attorney sending dunning letters must be directly and personally involved in the mailing of the letters in order to comply with the strictures of FDCPA." *Avila v. Rubin*, 84 F.3d at 228 (citing *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993)). The Second Circuit, however, appears to disagree with the Seventh Circuit's interpretation of its decision in *Clomon* when it later described a method by which attorneys can send debt collection letters without exercising any professional judgment:

> [O]ur prior precedents demonstrate that an attorney can, in fact, send a debt collection letter without being meaningfully involved as an attorney within the collection process, so long as that letter includes disclaimers that should make clear even to the "least sophisticated consumer" that the law firm or attorney sending the letter is not, at the time of the letter's transmission, acting as an attorney.

*Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 364 (2d Cir. 2005).

In 2012, the New Jersey Supreme Court's committees on the Unauthorized Practice of Law ("UPLC") and Advisory Committee on

13

Professional Ethics ("ACPE") issued a joint opinion (hereinafter the "Joint Opinion") concerning the sending of collection letters by lawyers. *Opinion 48 of the Committee on the Unauthorized Practice of Law* and *Opinion 725 of the Advisory Committee on Professional Ethics*, ___ N.J.L.J. ___, attached hereto as *Exhibit A*. It disapproved of the notion that an attorney can somehow "disclaim" attorney involvement. *Id.* ("While the FDCPA arguably permits a law firm to send debt collection letters in a lay capacity, New Jersey ethics rules have always prohibited the practice.").

That these substantial differences exist in interpretations of appropriate attorney professional conduct underscores the danger in creating a judicial "meaningful involvement" standard not found in the language of the statute. That a dozen years passed between the *Greco* decision's pronouncement allowing an attorney to disclaim she is involved in the process of sending letters under her law firm's letterhead and the release of the New Jersey Supreme Court's Joint Opinion, demonstrates the unintended consequences the meaningful involvement doctrine produces.

That courts may disagree in deciding what level of involvement is sufficient, also raises concern that, after *Jerman,* an attorney's good faith compliance with one court's standard of professional care under the FDCPA may not qualify as a *bona fide* error under § 1692k(c) to allow an attorney to avoid liability despite

14

her good faith compliance with one court's interpretation *See Jerman*, 130 S. Ct. at 1610-1611.

While § 1692k(e) would allow an attorney to avoid liability if she relied in good faith on an advisory opinion from the CFPB concerning the requisite level of attorney professional conduct she should exercise, she could not avoid liability under § 1692k(e) if the opinion were issued by the state court which regulates her attorney conduct. 15 U.S.C. § 1692k(e).

Meaningful involvement leads to the creation of these absurd results, which can be avoided only by rejecting the doctrine.

### III.    <u>CONCLUSION</u>

For these reasons, the National Association of Retail Collection Attorney respectfully requests that the Court reject the doctrine of meaningful involvement but otherwise affirm the decision of the court below.

Respectfully submitted,

BY:    <u>/s/ Donald Maurice</u>
Donald S. Maurice, Jr.
MAURICE & NEEDLEMAN, P.C.
5 Walter E. Foran Blvd., Ste 2007
Flemington, N.J. 08822
(908) 237-4550
(908) 237-4551 (fax)
dsm@mnlawpc.com
*Counsel for Amicus Curiae*
*National Association of Retail Collection Attorneys*

Dated: May 10, 2013

## CERTIFICATE OF COMPLIANCE PURSUANT TO FEDERAL RULES OF APPELLATE PROCEDURE 32(a)(7)(C) AND CIRCUIT RULE 32-1 FOR CASE NUMBER 07-55326

The undersigned counsel certifies that pursuant to Federal Rules of Appellate Procedure, Rule 32 (a)(7)(C) and Ninth Circuit Rule 32-1, the attached National Association of Retail Collection Attorneys' *Amicus Curiae* Brief is proportionately spaced, has a typeface of 14 points and contains 3,316 words.

**/s/ Donald Maurice**
Donald S. Maurice, Jr.

Dated: May 10, 2013

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, Counsel for *Amicus Curiae* the National Association of Retail Collection Attorneys states that it is not aware of any related cases pending before this court.

**/s/ Donald S. Maurice, Jr.**
Donald S. Maurice, Jr.

Dated: May 10, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on this date, the National Association of Retail Collection Attorneys' foregoing Motion for Leave to File an *Amicus Curiae* Brief and *Amicus Curiae* Brief was filed via the electronic filing system. I further certify that counsel for Appellant, Brett M. Weaver, and counsel for Appellees, Tomio Nartia, will accept service of the National Association of Retail Collection Attorneys' foregoing Motion for Leave to File an Amicus Curiae Brief and *Amicus Curiae* Brief by electronic means, as reflected in the electronic mail correspondence attached hereto. I further certify that copies of the National Association of Retail Collection Attorneys' foregoing Motion for Leave to File an *Amicus Curiae* Brief and *Amicus Curiae* Brief was sent to counsel for Appellant via electronic mail to:

Brett M. Weaver, Esq.
BrettW@johnsonandweaver.com

Daniel P. Murphy, Esq.
dmurphy245@yahoo.com

Tomio Buck Narita, Esq.
tnarita@snllp.com

**/s/ Donald Maurice**
Donald S. Maurice, Jr.

Dated: May 10, 2013



Rachel Marin <rmarin@mnlawpc.com>

## Consent to file electronically (Tourgeman)
2 messages

**Rachel Marin** <rmarin@mnlawpc.com>                          Thu, May 9, 2013 at 2:51 PM
To: Tomio Narita <tnarita@snllp.com>
Cc: Don Maurice <dsm@mnlawpc.com>

Tomio,
Would you consent to accepting service of NARCA's leave to file amicus, and the amicus brief electronically?

Thank you.

--
**Maurice & Needleman, P.C.**
**Rachel F. Marin, Esq.**
5 Walter E. Foran Blvd., Suite 2007
Flemington, New Jersey 08822
Direct (908) 905-5070
Mobile (908) 574-8032
Main (908) 237-4550
Fax (908) 237-4551
rmarin@mnlawpc.com
www.mnlawpc.com

**Tomio Narita** <TNarita@snllp.com>                          Thu, May 9, 2013 at 3:42 PM
To: Rachel Marin <rmarin@mnlawpc.com>
Cc: Don Maurice <dsm@mnlawpc.com>

Of course. Thanks.

Rachel Marin <rmarin@mnlawpc.com> wrote:

[Quoted text hidden]



Rachel Marin <rmarin@mnlawpc.com>

# Consent to accept service by electronic means (Tourgeman)
5 messages

**Rachel Marin** <rmarin@mnlawpc.com>                                    Thu, May 9, 2013 at 3:18 PM
To: brett@johnsonandweaver.com
Cc: Don Maurice <dsm@mnlawpc.com>

Dear Mr. Weaver,

My firm is filing NARCA's motion for leave to file an amicus brief, which is due tomorrow. Unfortunately we are not able to send you a copy of the brief before the deadline as you had requested.

Would you consent to accept service by electronic means on behalf of your client, per FRAP 25? Please let me know by email as we will need your consent in writing by tomorrow.

Thank you very much,

Rachel

--
**Maurice & Needleman, P.C.**
**Rachel F. Marin, Esq.**
5 Walter E. Foran Blvd., Suite 2007
Flemington, New Jersey 08822
Direct (908) 905-5070
Mobile (908) 574-8032
Main (908) 237-4550
Fax (908) 237-4551
rmarin@mnlawpc.com
www.mnlawpc.com

**Rachel Marin** <rmarin@mnlawpc.com>                                    Thu, May 9, 2013 at 3:19 PM
To: e8f8a6cb6+matter1018363004@maildrop.goclio.com

[Quoted text hidden]

**Brett M. Weaver** <BrettW@johnsonandweaver.com>                       Thu, May 9, 2013 at 4:58 PM
To: Rachel Marin <rmarin@mnlawpc.com>
Cc: Don Maurice <dsm@mnlawpc.com>

I will accept electronic service.

Brett



Brett M. Weaver

Partner

Johnson & Weaver, LLP

110 West "A" Street, Suite 750

San Diego, California 92101

Direct Dial: 619.230.1731

Firm Tel: 619.230.0063

Fax: 619.255.1856

www.johnsonandweaver.com


This message is from a law firm and may contain confidential and privileged information. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail and delete the message.



**From:** Rachel Marin [mailto:rmarin@mnlawpc.com]
**Sent:** Thursday, May 09, 2013 12:18 PM
**To:** Brett M. Weaver
**Cc:** Don Maurice
**Subject:** Consent to accept service by electronic means (Tourgeman)

[Quoted text hidden]

---

**Rachel Marin** <rmarin@mnlawpc.com>          Thu, May 9, 2013 at 5:10 PM
To: "Brett M. Weaver" <BrettW@johnsonandweaver.com>
Cc: Don Maurice <dsm@mnlawpc.com>

Thank you.
[Quoted text hidden]

---

**Rachel Marin** <rmarin@mnlawpc.com>          Thu, May 9, 2013 at 5:11 PM
To: e8f8a6cb6+matter1018363004@maildrop.goclio.com

---------- Forwarded message ----------
From: **Rachel Marin** <rmarin@mnlawpc.com>
[Quoted text hidden]
[Quoted text hidden]