# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

**No. 12-56783**

**Opinion Issued June 25, 2014**

**Jerome Farris and Andrew D. Hurwitz, Circuit Judges, and
Paul L. Friedman, District Judge, U.S. District Court for the District of Columbia,
sitting by designation**

---

## DAVID TOURGEMAN,

**Plaintiff - Appellant,**

**v.**

## COLLINS FINANCIAL SERVICES, INC., DBA Precision Recovery Analytics, Inc., a Texas Corporation; COLLINS FINANCIAL SERVICES, USA, INC., DBA Precision Recovery Analytic International, Inc.; PARAGON WAY, INC., a Texas Corporation; NELSON & KENNARD, a Partnership,

**Defendants-Appellees,
And
DELL FINANCIAL SERVICES, LP.
Defendant.**

---

**Appeal from United States District Court
Southern District of California
The Honorable Cathy Ann Bencivengo
CV-08-01392 CAB (NLS)**

---

## PETITION FOR PANEL REHEARING OR REHEARING *EN BANC* OF APPELLEE NELSON & KENNARD

---

TOMIO B. NARITA (SBN 156576)
JEFFREY A. TOPOR (SBN 195545)
SIMMONDS & NARITA LLP
44 Montgomery St., Suite 3010
San Francisco, California 94104
Telephone: (415) 283-1000
Facsimile: (415) 352-2625
*Attorneys for Appellee Nelson & Kennard*

## CORPORATE DISCLOSURE STATEMENT

The undersigned counsel for appellee Nelson & Kennard states appellee Nelson & Kennard is a California partnership.


DATED this 13th day of August, 2014.


By    s/Tomio B. Narita
              Tomio B. Narita
              Simmonds & Narita LLP
              44 Montgomery Street, Suite 3010
              San Francisco, CA 94104

              Attorneys for Appellee Nelson & Kennard

i

# TABLE OF CONTENTS

STATEMENT OF BASIS FOR REHEARING OR REHEARING EN BANC.. . . 1

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.     STANDARD REVIEW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    PANEL REHEARING OR REHEARING *EN BANC* IS PROPER
       BECAUSE THE PANEL'S DECISION DIRECTLY CONFLICTS
       WITH THIS COURT'S PRIOR DECISION IN *GUERRERO V. RJM
       ACQUISITIONS, LLC*.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   PANEL REHEARING OR REHEARING *EN BANC* IS PROPER
       BECAUSE THE PANEL'S DECISION MISAPPREHENDS THE
       DECISIONS OF THE SUPREME COURT AND THIS COURT
       REGARDING STANDING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV.    PANEL REHEARING OR REHEARING *EN BANC* IS PROPER
       BECAUSE THE PANEL IMPROPERLY DIRECTED THE DISTRICT
       COURT TO ENTER JUDGMENT IN FAVOR TOURGEMAN ON
       REMAND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alston v. Countrywide Fin. Corp.*
585 F.3d 753 (3d Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Armster v. United States Dist. Court for the Cent. Dist. of Cal.*
806 F.2d 1347 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Baker v. G.C. Servs. Corp.*
677 F.2d 775 (9th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Beaudry v. TeleCheck Servs., Inc.*
579 F.3d 702 (6th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Carter v. Welles-Bowen Realty, Inc.*
553 F.3d 979 (6th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10

*Clark v. Capital Credit & Collection Servs., Inc.*
460 F.3d 1162 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*DeMando v. Morris*
206 F.3d 1300 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

*Donoghue v. Bulldog Investors Gen. P'ship*
696 F.3d 170 (2d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

*Edwards v. First Am. Corp.*
610 F.3d 514 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Evon v. Law Offices of Sidney Mickell*
688 F.3d 1015 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Gonzalez v. Arrow Fin. Servs., LLC*
660 F.3d 1055 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

iii

*Guerrero v. RJM Acquisitions LLC*
499 F.3d 926 (9th Cir. 2007)................................................. *passim*


*Hammer v. Sam's East, Inc.*
__ F.3d __, 2014 WL 2524534 (8th Cir. June 5, 2014). .............. 8, 9, 10, 11

*Havens Realty Corp. v. Coleman*
455 U.S. 363 (1982). ............................................... 8, 10

*Hitchcock v. Wainwright*
777 F.2d 628 (11th Cir. 1985)................................................. 2

*Miller v. Wolpoff & Abramson, L.L.P.*
321 F.3d 292 (2d Cir. 2003). ........................................... 11, 12

*Robey v. Shapiro, Marianos & Cejda, L.L.C.*
434 F.3d 1208 (10th Cir. 2006)............................................. 8, 11

*Robins v. Spokeo*
742 F.3d 409 (9th Cir. 2014)............................................... 8, 10

*Phillips v. Asset Acceptance, LLC*
736 F.3d 1076 (7th Cir. 2013)............................................. 11, 12

*Sierra Club v. Morton*
405 U.S. 727 (1972). ................................................... 8

*Terran v. Kaplan*
109 F.3d 1428 (9th Cir. 1997)................................................ 11

*Tourgeman v. Collins Fin. Servs., Inc.*
_F.3d _, 2014 WL 2870174 (9th Cir. June 25, 2014). .................. *passim*

*In re Zynga Privacy Litig.*
750 F.3d 1098 (9th Cir. 2014)............................................. 8, 10

iv

# FEDERAL STATUTES

Fair Credit Reporting Act
    15 U.S.C. § 1681n(a)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fair Debt Collection Practices Act
    15 U.S.C. § 1692 *et seq.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
    § 1692c(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4
    § 1692c(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    § 1692c(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4
    § 1692e. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 13
    § 1692g. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    § 1692g(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5
    § 1692k(b)(1).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Federal Rules of Appellate Procedure
    Rule 35(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    Rule 35(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    Rule 40(a)(2,4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## STATEMENT OF BASIS FOR REHEARING OR REHEARING EN BANC

Appellee Nelson & Kennard respectfully submits that panel rehearing or, in the alternative, rehearing *en banc* of this Court's split decision in *Tourgeman v. Collins Fin. Servs., Inc.*, _F.3d _, 2014 WL 2870174 (9th Cir. June 25, 2014),[1] is appropriate for the following reasons:

1.     En banc consideration is needed to maintain uniformity of this Court's decisions, because the panel's divided decision conflicts with this Court's holding in *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926 (9th Cir. 2007) (per curiam), which held that debt collection communications that are received by a debtor's attorney are not actionable under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA");

2.     The panel decision misapprehends decisions of the United States Supreme Court and of this Court on standing, because it held Tourgeman could pursue claims based upon collection letters he admittedly never received; and,

3.     The panel decision improperly directs the District Court to enter judgment in favor of Tourgeman on remand, even though the District Court still has not had an opportunity to (a) address the affirmative defense of "bona fide error" that Nelson & Kennard properly raised in the District Court, or (b) assess what amount of damages, if any, to award in connection with any judgment.

---

[1]  A copy of the opinion is attached hereto as **Appendix A**.

**ARGUMENT**

## I.    STANDARD OF REVIEW

A petition for panel rehearing may be granted if the panel that issued the opinion "overlooked or misapprehended" a "point of law or fact."  Fed. R. App. P. 40(a)(2, 4).  "The purposes of petitions for rehearing, by and large, is to ensure that the panel properly considered all relevant information in rendering its decision. . . ."  *Armster v. United States Dist. Court for the Cent. Dist. of Cal.*, 806 F.2d 1347, 1356 (9th Cir. 1986); *see Hitchcock v. Wainwright*, 777 F.2d 628, 629 (11th Cir. 1985) ("The focus of the petition for rehearing is thus to enable the court to correct its mistakes.") (Johnson, Kravitch, JJ, dissenting from denial of pet. for reh'g *en banc*).

A petition for rehearing en banc, meanwhile, may be granted if the panel's decision "conflicts with a decision" of the Ninth Circuit "and consideration by the full court is therefore necessary to secure and maintain uniformity of the court's decisions."  Fed. R. App. P. 35(a), (b).

## II.    PANEL REHEARING OR REHEARING *EN BANC* IS PROPER BECAUSE THE PANEL'S DECISION DIRECTLY CONFLICTS WITH THIS COURT'S PRIOR DECISION IN *GUERRERO V. RJM ACQUISITIONS, LLC*

In a divided opinion, the Court held that Tourgeman could pursue claims against Nelson & Kennard based upon a letter he never received – a letter he saw for the first time after it was produced to his litigation attorney in discovery in this

action. *See Tourgeman*, 2014 WL 2870174 at *1 (noting that letter was mailed to addresses that belonged to Tourgeman's parents and that he did not learn of it until after litigation started). This portion of the Court's decision directly conflicts with the holding in *Guerrero*.

In *Guerrero*, the issue before the Court was whether a collection letter delivered to a consumer's attorney could be actionable under the FDCPA. *See Guerrero*, 499 F.3d at 929. The collector had argued that such a letter was not subject to the FDCPA, because "the Act's purpose is to protect unsophisticated debtors from abusive debt collectors, and once a consumer obtains this protection by procuring legal counsel, the Act's protections become superfluous and therefore its provisions no longer apply." *Id.* This Court agreed. *Id.*

In concluding that a letter delivered to a debtor's attorney was not subject to the FDCPA, this Court examined the structure of the statute and noted how a "consumer and his attorney are not one in the same for purposes of the Act." *Id.* at 935.[2] When the FDCPA is read "as a whole," the statute "suggests a congressional understanding that, when it comes to debt collection matters, lawyers and their

_____

[2] For example, the Court observed that pursuant to section 1692c(a)(2), once a consumer has retained an attorney, the collector generally may no longer contact the consumer directly unless the attorney gives consent. *Id.* at 935. Section 1692c(b) of the Act also distinguishes between a consumer or his attorney. *Id.* Further, section 1692c(d) of the FDCPA defines the word "consumer" and does not include the consumer's attorney as part of the definition. *Id.*

debtor clients will be treated differently.  Specifically, it appears that Congress
viewed attorneys as intermediaries able to bear the brunt of overreaching debt
collection practices from which debtors and their loved ones should be protected."
*Id*.  By way of example, the Court noted that although section 1692c(d) of the Act
broadly defined the term "consumer" to include "a range of the debtor's relatives
and fiduciaries" who are entitled to protection from improper collection efforts, a
debtor's attorney is <u>not</u> included in the definition.  *Id.*  According to the Court:

> The conspicuous absence of the debtor's attorney from that otherwise
> extensive list is telling.  It suggests that in approaching the debt collection
> problem, Congress did not view attorneys as susceptible to the abuses that
> spurred the need for the legislation to begin with, and that Congress built
> that differentiation into the statute itself.

*Id*.  The Court further observed that the language of section 1692c(a)(2), which
requires collectors who know the consumer has retained counsel to communicate
only with that counsel "leads to the same conclusion."  *Id*.  "The rationale behind
this rule is clear.  Unsophisticated consumers are easily bullied and misled.
Trained attorneys are not."  *Id*.

Regarding the claim under section 1692g of the FDCPA, the *Guerrero*
Court noted that "the crucial question is whether 'collection of the debt' can
include efforts directed exclusively to a debtor's attorney, but not at the debtor
himself."  *Id*. at 936.  On that issue, the Court held that section "1692g(b)'s
repeated emphasis on the 'consumer,' along with the Act's clear distinction
between consumer and attorney, compel the conclusion that a collection effort

4

must be aimed directly to the consumer himself to be prohibited by § 1692g(b)."

*Id*.  When evaluating the claim under section 1692e of the FDCPA, the *Guerrero*

Court held that "communications directed only to a debtor's attorney, and

unaccompanied by any threat to contact the debtor, are not actionable under the

Act."  *Id*.  As the Court observed:

> The purpose of the FDCPA is to protect **vulnerable and unsophisticated**
> debtors from abuse, harassment and deceptive collection practices. . . .
> Congress was concerned with disruptive, threatening, and dishonest tactics.
> The Senate Report accompanying the Act cites practices such as 'threats of
> violence, telephone calls at unreasonable hours [and] misrepresentation of
> consumer's legal rights.' (Citation).  **In other words, Congress seems to
> have contemplated the type of actions that would intimidate
> unsophisticated individuals and which, in the words of the Seventh
> Circuit, 'would likely disrupt a debtor's life.'** (Citation).  When an
> individual is represented by counsel who fields all communications relevant
> to the debt collection, these concerns quickly evaporate.  Attorneys possess
> exactly the degree of sophistication and legal wherewithal that individual
> debtors do not.

*Id*. at 938-39 (emphasis added).  Summarizing its conclusions, the *Guerrero* Court

noted that the FDCPA not "intended as a sword to be brandished by debtors who

have retained counsel – the very debtors least in need of the Act's protections."

*Id*. at 941.

The panel's decision conflicts directly with the holding of *Guerrero*.  It is

undisputed that Tourgeman never received copies of the collection letter sent by

Nelson & Kennard or the prior letters sent by Paragon Way.  *See Tourgeman*,

5

2014 WL 2870174 at *1.[3]  Indeed, Tourgeman did not learn about the letters until

---

[3]  Tourgeman's testimony that he had <u>not</u> received the letters from Paragon Way or Nelson & Kennard was unequivocal:

Q.   So the first -- you said the first time that you heard about -- after 2003, that you heard about the unpaid obligation was about the time your parents were served with the lawsuit.  Correct?

A.   Correct.

Q.   Okay.  Prior to that, had you ever heard of a company called Collins Financial Services?

A.   Excuse me.  No.

Q.   And have you ever had any communication, written or oral, email, by any means with Collins Financial Services?

A.   No.

Q.   Have you ever heard of a company named Paragon Way, Incorporated?

A.   No.

Q.   Again, have you ever had any communication with a company called Paragon Way?

A.   Not that I know of.

Q.   So you never received any correspondence from Paragon Way?

A.   Not that I know of.

Q.   Do you know whether your parents received any correspondence from Paragon Way?

A.   Not that I know of.

Q.   Do you know whether your parents have ever had a telephone call with Paragon Way?

A.   Not that I could recall.

Q.   They never told you about one?

A.   They never told me, no.

Q.   Same question with respect to Collins Financial Services.

A.   Not that they've told me.

* * * * *

after they were first produced to his litigation attorney during discovery in this matter, after which he amended his complaint to include claims based upon the letters. This Court held in *Guerrero* that letters sent to an attorney for a debtor do <u>not</u> amount to "collection of a debt" within the meaning of the FDCPA and cannot violate section 1692e of the statute. *Guerrero*, 499 F.3d at 936. Despite this, the Court ruled that Tourgeman was entitled to pursue a claim based on letters that Nelson & Kennard produced during discovery to Tourgeman's attorney, because the letters misidentified the name of the original creditor on the loan, thereby violating section 1692e of the FDCPA. *See Tourgeman*, 2014 WL 2870174 at **9-10.

Nelson & Kennard respectfully submits that this Court's decision in *Guerrero* cannot be reconciled with the ruling that the collection letters in this matter violated section 1692e of the FDCPA. To assure consistency with the decisions of this Court, panel rehearing or rehearing *en banc* are appropriate.

---

Q.   How about Nelson & Kennard? Had you heard of them prior to being served with a lawsuit?

A.   No.

Q.   And I take it that you never received any correspondence from them prior to the -- learning about the lawsuit.

A.   No.

Q.   Never had a phone call with them?

A.   No.

SER 499-501.

### III.  PANEL REHEARING OR REHEARING *EN BANC* IS PROPER BECAUSE THE PANEL'S DECISION MISAPPREHENDS THE DECISIONS OF THE SUPREME COURT AND THIS COURT REGARDING STANDING

In holding that Tourgeman had standing to pursue claims based on letters he admittedly never received, the panel relied on a line of Supreme Court and circuit cases (both within and without this circuit) that are distinguishable in one key respect from this case.  Unlike this case, in every one of the standing cases upon which the panel relied, the plaintiff and defendant had direct contact.[4]  Thus, there was no question that the plaintiff was "himself among the injured."  *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972).  Here, Tourgeman was not "among the injured" because he never received the letters that he challenged – they were produced to his litigation attorneys.  The panel's misapprehension of this key distinction warrants panel rehearing or rehearing *en banc*.

The panel acknowledged that Tourgeman "could not have suffered any pecuniary loss or mental distress as the result of a letter that he did not encounter

---

[4]  *See Tourgeman*, 2014 WL 2870174 at **4-5 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982); *Edwards v. First Am. Corp.*, 610 F.3d 514 (9th Cir. 2010); *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753 (3d Cir. 2009); *Carter v. Welles-Bowen Realty, Inc.*, 553 F.3d 979 (6th Cir. 2009); *Robins v. Spokeo*, 742 F.3d 409 (9th Cir. 2014); *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702 (6th Cir. 2009); *In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014); *Hammer v. Sam's East, Inc.*, __ F.3d __, 2014 WL 2524534 (8th Cir. June 5, 2014); *Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170 (2d Cir. 2012); *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208 (10th Cir. 2006); *DeMando v. Morris*, 206 F.3d 1300 (9th Cir. 2000)).

until months after it was sent – when litigation was already underway." *Tourgeman*, 2014 WL 2870174 at * 5. Nonetheless, the panel concluded that "the injury he claims to have suffered was the violation of his right not to be the target of misleading debt collection communications. The alleged violation of this statutory right – like those rights at issue in [those] cases that we have noted – constitutes a cognizable injury under Article III." *Id.*

In short, the panel held that an intended – but not actual – recipient of a communication has standing to pursue claims under the FDCPA. As the court recognized in *Hammer*, 2014 WL 2524534 at *4, however, "the liability provision [of the Fair Credit Reporting Act, 15 U.S.C. § 1681n(a)(1)(A)] does not authorize suits by members of the public at large, but creates a sufficient nexus between the individual plaintiff and the legal violation to avoid Article III concerns." *See also Carter*, 553 F.3d at 988 ("Congress may confer standing to redress injuries only on parties who actually have been deprived of the newly established statutory rights."). By allowing one who is the "target" of an attempted communication, but whom is not actually "hit" by the letter, to pursue relief under the FDCPA, the panel effectively "authorize[d] suits by members of the public at large." Nothing in the FDCPA or in Article III permits this.

Nor do any of the cases relied upon by the panel warrant such an extension of the law, because in every single one of them, the "target" was "hit" even though the plaintiffs did not suffer an pecuniary, monetary or other concrete injury. In

*Havens*, the housing "testers" had standing because they were "the object of a misrepresentation" and "were told" false information.  *See* 455 U.S. at 368-69, 373-74.  In *Edwards*, the home purchaser had standing because she "received" the offending "HUD-1 Settlement Statement," even though she did not actually incur an overcharge for title insurance.  *See* 610 F.3d at 516; *accord Alston*, 585 F.3d at 763 (plaintiff "receive[d] a loan accompanied by a kickback or unlawful referral, which is plainly a particularized injury, and the very injury pressed here"); *Carter*, 553 F.3d at 982, 989 (appellants who "entered into a residential real estate purchase agreement" and alleged that they "were given referrals sullied by kickbacks" in violation of RESPA had Article III standing).

Likewise, in *Robins*, the defendant published information on its website about the plaintiff, and plaintiff claimed the information was false.  *See* 742 F.3d at 410-11; *accord Beuadry*, 579 F.3d at 705, 707 (plaintiff presented checks to businesses that used defendants' check verification services, which resulted in creation of inaccurate credit reports describing plaintiff as "first-time check writer"; there was "no obstacle" to Article III standing because "Beaudry alleged that she was one of the consumers about whom the defendants were generating credit reports based on inaccurate information . . .").  In *Zynga*, the plaintiffs had standing because their personal information was allegedly disclosed.  *See* 750 F.3d at 1101 & 1105 n.5.  In *Hammer*, appellants made purchases at appellee's stores "[o]n multiple occasions . . . and were given electronically-printed receipts at the

10

point of sale" that impermissibly disclosed credit card numbers. *See* 2014 WL 2524534 at **1, 4 (holding that appellants had Article III standing where they alleged "it was their own receipts that contain numbers in violation of [statute]").

*Donoghue* involved claims against a hedge fund and its principal for impermissible "'short-swing' trading," in violation of the Securities Exchange Act, by a plaintiff who owned shares in the company whose stock was impermissibly traded. *See* 696 F.3d at 172-73. As an "'owner of any security of the issuer," plaintiff was authorized to sue "'in the name and in behalf of the issuer.'" *Id.* at 174. It was undisputed that plaintiff had the necessary "'continuing financial stake'" in the lawsuit that was required. *Id.* at 176.

In *Robey*, the plaintiff had standing because a collection action, which sought allegedly impermissibly attorneys' fees, was actually filed against him. *See* 434 F.3d at 1209. Finally, in *DeMando*, the plaintiff "received a Notice of Change in Terms" to her credit card agreement, which she claimed violated the Truth in Lending Act. *See* 206 F.3d at 1302.

The same is true as to every one of the cases that the panel relied upon in holding that statutory standing existed.[5] In each case, the plaintiff received the

---

[5] *See Tourgeman*, 2014 WL 2870174 at *6 (citing *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *Robey*, 434 F.3d 1208; *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292 (2d Cir. 2003); *Baker v. G.C. Servs. Corp.*, 677 F.2d 775 (9th Cir. 1982); *Gonzalez v. Arrow Fin. Servs., LLC*, 660 F.3d 1055 (9th Cir. 2011); *Terran v. Kaplan*, 109 F.3d 1428 (9th Cir. 1997); *Evon v. Law Offices*

challenged communication or had direct contact with the defendant.[6]  The cases
are also inapposite because none of those courts addressed whether standing
existed.

The panel found that Tourgeman should prevail on his claims under
1692e(2)(A) of the FDCPA, which prohibits the "false representation of the
character, amount, or legal status of any debt" as well as his claim under section
1692e(10), which forbids the "use of any false representation or deceptive means
to collect or attempt to collect any debt."  *Tourgeman*, 2014 WL 2870174 at *10.
Because Tourgeman never got the letters, however, there simply was no "false
representation" made, nor any "deceptive means" employed.  A letter that never
reaches its intended recipient cannot "represent" anything to anyone, nor can it be
deemed a "means" to "deceive" anyone. This Court, nor any other Court to Nelson
& Kennard's knowledge, has never read the FDCPA so broadly.

With due respect to the consumer protection goals of the FDCPA, the
panel's decision stretches those goals past their breaking point.  Nelson &

_____

*of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012); *Clark v. Capital Credit &
Collection Servs., Inc.*, 460 F.3d 1162 (9th Cir. 2006)).

[6]  In *Phillips*, the plaintiff was sued by defendant; in *Miller*, the plaintiff
received letters sent by the defendant; in *Baker*, the defendant sent letters to, and
called, the plaintiff; in *Gonzalez*, the plaintiff received letters sent by the
defendant; in *Evon*, the defendant sent letters to the plaintiff's employer; and, in
*Clark*, the plaintiff spoke with the defendant.

12

Kennard submits that Congress simply cannot confer standing on a person who never received an allegedly misleading collection letter. In essence, the panel's decision means that any person without a direct connection to the challenged act – including any member of the public who is <u>not</u> among the injured – has standing. None of the authorities relied upon by the panel support such a sweeping notion of standing. Rehearing is warranted.

## IV. PANEL REHEARING OR REHEARING *EN BANC* IS PROPER BECAUSE THE PANEL IMPROPERLY DIRECTED THE DISTRICT COURT TO ENTER JUDGMENT IN FAVOR TOURGEMAN ON REMAND

At a bare minimum, panel rehearing or rehearing *en banc* should be granted with respect to the Court's decision regarding the disposition of the case on remand. The Court concluded its opinion by stating: "For the foregoing reasons, we conclude that the judgment of the district court granting judgment to Collins, Paragon Way, and Nelson & Kennard must be reversed, and that judgment should instead be entered for Tourgeman against Paragon Way and Nelson & Kennard." *Tourgeman*, 2014 WL 2870174 at *13. Even if the panel's reversal of the district court's judgment stands, it was improper for this Court to direct that judgment be entered in favor of Tourgeman against Paragon Way and Nelson & Kennard because the district court never ruled on the firm's "bona fide error" defense or the issue of damages. At most, the Court should hold that the letters and the complaint violated section 1692e of the FDCPA, and it should remand the matter

13

for proceedings consistent with its opinion.

Even if Nelson & Kennard violated the FDCPA, the firm will not be liable to Tourgeman if the district court rules that the violation was the result of a "bona fide error" as defined by the statute. Nelson & Kennard can prevail on the defense if it can show by a preponderance of the evidence that the violation was not intentional, and resulted despite the existence of procedures reasonably adapted to prevent the error. *See* 15 U.S.C. § 1692k(c); *Clark v. Capital Credit Coll. Servs., Inc.,* 460 F.3d 1162, 1177 (9th Cir. 2006).

Here, Nelson & Kennard properly raised the "bona fide error" defense, and the matter was fully briefed in connection with summary judgment motion filed below (*see Tourgeman v. Collins Fin. Servs., Inc.*, 2012 WL 3731807, *3 (S.D. Cal. Aug. 29, 2012)), but the district court never addressed the defense, because it ruled as a matter of law that the letters and the complaint did not violate the FDCPA. On remand, the district court must be permitted to address the "bona fide error" defense before determining whether any judgment should be entered for or against the firm.

In addition, it was improper for the Court to direct that judgment be entered in favor of Tourgeman, because the trier of fact has not had an opportunity to address the amount of damages, if any, to award as part of any judgment. If the matter is remanded, Tourgeman will presumably wish to pursue what the statute refers to as "additional damages" (often called "statutory damages") in an amount

not to exceed $1,000.  *See* 15 U.S.C. § 1692k(b)(1).  Whether additional damages are appropriate, and if so, in what amount, is determined by the trier of fact based upon a balancing of multiple factors, including "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."  *Id.*  Thus, at a minimum, panel rehearing or rehearing en banc should be granted with respect to the portion of Court's opinion holding that judgment should be entered in favor of Tourgeman.

## CONCLUSION

For each of the foregoing reasons, Nelson & Kennard submits that the Court should grant rehearing or, in the alternative, rehearing en banc.


Respectfully submitted,

SIMMONDS & NARITA LLP



Dated: August 13, 2014          By   s/Tomio B. Narita
                                  Tomio B. Narita
                                  Attorneys for Appellee
                                  Nelson & Kennard

**CERTIFICATE OF COMPLIANCE PURSUANT
TO FEDERAL RULES OF APPELLATE
PROCEDURE 32(a)(7)(C) AND CIRCUIT RULE 32-1
FOR CASE NUMBER 12-56783**

Pursuant to Federal Rules of Appellate Procedure, Rule 32 (a)(7)(C) and Ninth Circuit Rule 32-1, I certify that the attached brief is proportionately spaced, has a typeface of 14 points and contains 3,689 words.


Respectfully submitted,

SIMMONDS & NARITA LLP


Dated: August 13, 2014          By   s/Tomio B. Narita
                                           Tomio B. Narita
                                           Attorneys for Appellee
                                           Nelson & Kennard

16

## **STATEMENT OF RELATED CASES**

Pursuant to Circuit Rule 28-2.6, counsel for appellee Nelson & Kennard states that it is not aware of any related cases pending before this court.


By    s/Tomio B. Narita
              Tomio B. Narita

## CERTIFICATE OF SERVICE

I hereby certify that on this date, the Appellee's Petition For Rehearing Or Rehearing En Banc was filed electronically using the Court ECF System and was thereby served on Brett Weaver, counsel for Appellant. I further certify that, as reflected in the electronic mail correspondence attached hereto, counsel for Appellant, Dan Murphy, who is not a registered Appellate ECF user, has waived service of paper copies of this filing.

Dated this 13th day of August, 2014

s/Tomio B. Narita
Tomio B. Narita

18

| | |
|---|---|
| **From:** | Daniel Murphy |
| **To:** | Tomio Narita; BrettW@johnsonandweaver.com |
| **Cc:** | Jeffrey Topor |
| **Subject:** | Re: Tourgeman - service of petition for rehearing |
| **Date:** | Monday, August 11, 2014 11:08:52 AM |

Tomio, that is fine, thanks for checking.  Dan

---

**From:** Tomio Narita <TNarita@snllp.com>
**To:** "dmurphy245@yahoo.com" <dmurphy245@yahoo.com>; "BrettW@johnsonandweaver.com"
 <BrettW@johnsonandweaver.com>
**Cc:** Jeffrey Topor <JTopor@snllp.com>; Tomio Narita <TNarita@snllp.com>
**Sent:** Sunday, August 10, 2014 4:41 PM
**Subject:** Tourgeman - service of petition for rehearing

Counsel: - we plan to e-file the petition for rehearing with the Ninth Circuit this Wednesday,
August 13th.  Although Brett Weaver is a registered e-filer, the last we knew, Dan Murphy was
not.  Will plaintiff waive service of a paper copy the petition on Dan Murphy, as you have
done in the past?   Please advise.

Thank you.

Tomio B. Narita
Simmonds & Narita LLP
44 Montgomery Street, Suite 3010
San Francisco, California  94104
Direct line (415) 283.1010
Mobile (415) 519.6093
Main Line (415) 283.1000
Fax (415) 352.2625
email:  tnarita@snllp.com
www.snllp.com
www.fdcpadefense.blogspot.com

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION.  CONFIDENTIALITY NOTICE:  The preceding E-mail
message, including any attachments,  contains information that is confidential, protected by the
attorney/client privilege, work-product doctrine or other applicable privileges, and constitutes  non-
public information. It is intended to be conveyed only to the designated recipient(s). If you are not
an intended recipient of this message, please notify the sender. Unauthorized use, dissemination,
distribution, or reproduction of this message is strictly prohibited and may be unlawful. No
responsibility is accepted by the sender for any loss or damage arising in any way from its use.

**APPENDIX A**

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAVID TOURGEMAN,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>COLLINS FINANCIAL SERVICES, INC.,<br>DBA Precision Recovery Analytics,<br>Inc., a Texas corporation; NELSON &<br>KENNARD, a partnership; PARAGON<br>WAY, INC.; COLLINS FINANCIAL<br>SERVICES USA, INC.,<br>*Defendants-Appellees*,<br><br>and<br><br>DELL FINANCIAL SERVICES, LP,<br>*Defendant*. | No. 12-56783<br><br>D.C. No.<br>3:08-cv-01392-<br>CAB-NLS<br><br><br>OPINION |

Appeal from the United States District Court
for the Southern District of California
Cathy Ann Bencivengo, District Judge, Presiding

Argued and Submitted
April 9, 2014—Pasadena, California

Filed June 25, 2014

Before: Jerome Farris and Andrew D. Hurwitz, Circuit
Judges, and Paul L. Friedman, District Judge.[*]

Opinion by Judge Friedman;
Dissent by Judge Farris

---

## SUMMARY[**]

---

### Fair Debt Collection Practices Act

The panel reversed the district court's summary judgment
in favor of the defendants in a class action under the Fair
Debt Collection Practices Act.

The panel held that the plaintiff had Article III standing
to assert claims based on collection letters that he did not
receive because the alleged violation of his statutory right not
to be the target of misleading debt collection communications
constituted a cognizable injury.  The panel also held that the
plaintiff had a statutory cause of action under the FDCPA.

The panel reversed the district court's summary judgment
on claims that the defendants violated § 1692e of the FDCPA
by misidentifying the plaintiff's original creditor in a series
of collection letters sent to him, as well as in a complaint filed
against him in state court.  The panel held that the letters and

---

[*] The Honorable Paul L. Friedman, District Judge, U.S. District Court
for the District of Columbia, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

the complaint were materially misleading, and that the plaintiff was entitled to judgment under § 1692e(2) and (10).

Dissenting, Judge Farris wrote that he would affirm the district court's judgment.

---

**COUNSEL**

Brett M. Weaver (argued), Johnson & Weaver, LLP, San Diego, California, and Daniel P. Murphy, Law Offices of Daniel Murphy, San Diego, California, for Plaintiff-Appellant.

Tomio B. Narita (argued) and Jeffrey A. Topor, Simmonds & Narita LLP, San Francisco, California, for Defendant-Appellee Nelson & Kennard.

No appearance for Defendants-Appellees Collins Financial Services, Inc., Collins Financial Services USA, Inc., or Paragon Way, Inc.

---

**OPINION**

FRIEDMAN, District Judge:

This is a class action brought under the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), 15 U.S.C. § 1692 *et seq.* Plaintiff David Tourgeman contends that the defendants — Collins Financial Services, Inc.; Paragon Way, Inc.; Nelson & Kennard; and Collins Financial Services USA, Inc. — made false representations to him in connection with

their efforts to collect a purported debt.[1]    Specifically, Tourgeman argues that the defendants violated the Act by misidentifying his original creditor in a series of collection letters sent to him, as well as in a complaint filed against him in state court.  He also maintains that one defendant, Nelson & Kennard, misleadingly represented that its collection letter was from an attorney when, on Tourgeman's account of the facts, no attorney had been "meaningfully involved" in evaluating his case.  The district court granted summary judgment to the defendants.  We have jurisdiction under 28 U.S.C. § 1291.  We now reverse and hold that judgment should be entered for Tourgeman.

## I.  BACKGROUND

David Tourgeman bought a Dell computer.  At the time of the purchase, Tourgeman resided in Mexico, and he ordered the computer to be shipped to his parents' home in California.  He financed the purchase through Dell Financial Services, which arranged for a loan to be originated by CIT Online Bank.  Dell Financial then serviced the loan.  According to Tourgeman, he completed repayment within two years of buying the computer.  But Dell Financial's records reflected otherwise.    Tourgeman's allegedly outstanding debt therefore was charged off and then sold,

---

[1] Tourgeman serves here as the named plaintiff on behalf of a class of consumers similarly situated.  This appeal resolves the essential legal question that underlies Tourgeman's and the class's claims under one section of the FDCPA, 15 U.S.C. § 1692e.  For ease of reference, we refer only to plaintiff Tourgeman rather than to the class.

along with more than 85,000 other Dell Financial debts, to Collins Financial Services.[2]

Collins transferred Tourgeman's file along with the other Dell Financial accounts to Collins's affiliated collection agency, Paragon Way, Inc., which mailed three letters to Tourgeman encouraging him to pay off the purported debt. Collins then referred the file to the law firm of Nelson & Kennard, which sent its own dunning letter to Tourgeman. All of these letters were mailed to addresses in California at which Paragon and Nelson & Kennard believed Tourgeman might reside. In fact, the addresses belonged to Tourgeman's parents, and Tourgeman himself remained resident in Mexico. After receiving no response to the letters, Nelson & Kennard filed a complaint on behalf of Collins in San Diego County Superior Court. Tourgeman retained counsel, and Nelson & Kennard eventually elected to dismiss the action. It was during this state court litigation that Tourgeman learned of the several letters that had been mailed to him at his parents' addresses. *See Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-cv-1392, 2011 WL 3176453, at *6 (S.D. Cal. July 26, 2011).

Tourgeman then went on the offensive. He filed this lawsuit in federal district court, alleging that Collins, Paragon Way, and Nelson & Kennard had violated the FDCPA, as well as California law, in their efforts to collect the purported

---

[2] It is immaterial to this appeal whether Tourgeman actually had paid his loan in full; none of his FDCPA claims depends on the validity of the debt.

6        TOURGEMAN V. COLLINS FINANCIAL SERVS.

debt from him.[3]  Tourgeman's complaint survived motions to dismiss filed by the several defendants, *see id.*, and the district court later certified a class of consumer plaintiffs, *see Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-cv-1392, 2012 WL 1327824, at *4–10 (S.D. Cal. Apr. 17, 2012).  But upon the defendants' motions for summary judgment and Tourgeman's cross-motion, the court granted judgment to the defendants.  *See Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-cv-1392, 2012 WL 3731807 (S.D. Cal. Aug. 29, 2012).

On appeal, Tourgeman makes two claims under the FDCPA.  His main claim arises from the fact that the defendants — both in their letters and in the state court complaint — falsely identified his original creditor as "American Investment Bank, N.A.," when, in actuality, CIT Online Bank originated the loan.  Tourgeman contends that this misidentification violated the Act's prohibition on the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.  Tourgeman's second claim relates to the letter sent to him by the law firm of Nelson & Kennard.  He argues that the attorney who signed the letter had not been "meaningfully involved" in evaluating his case, and that the letter therefore runs afoul of 15 U.S.C. § 1692e(3), which proscribes "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney."   Tourgeman seeks only statutory damages,

---

[3] Tourgeman also sued Dell Financial, with which he later settled; that entity is not therefore involved in this appeal.  Collins and Paragon Way have elected neither to file briefs nor to offer argument on this appeal, but we nonetheless are obligated to review the record in full.  *See Brown Bag Software v. Symantec, Corp.*, 960 F.2d 1465, 1478 (9th Cir. 1992).  In any event, Nelson & Kennard offers arguments equally applicable to the letters sent by Paragon Way.

conceding that he suffered no pecuniary loss as a result of the defendants' conduct.

## II.  STANDING

Nelson & Kennard first argues that Tourgeman lacks both statutory and Article III standing to assert any claims based on the collection letters, which Tourgeman admittedly never received when they were sent.  The law firm contends that the FDCPA does not provide a cause of action to a consumer in Tourgeman's position, notwithstanding the statute's broad language providing that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person."  15 U.S.C. § 1692k(a). Nelson & Kennard further maintains that even if the FDCPA does purport to endow such consumers with a cause of action, Article III would forbid it, because consumers who never receive the offending communication have suffered no injury in fact.  Tourgeman's position is that a violation of the FDCPA "in and of itself [] confers Article III standing."

### A.  Article III Standing

"Article III of the Constitution limits federal-court jurisdiction to 'Cases' and 'Controversies.'" *Massachusetts v. E.P.A.*, 549 U.S. 497, 516 (2007).  The requirement of standing flows from this limitation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Standing doctrine assures that "the litigant is entitled to have the court decide the merits of the dispute or of particular issues," *Warth v. Seldin*, 422 U.S. 490, 498 (1975), by demanding that he or she "possess a 'direct stake in the outcome' of the case," *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2662 (2013)

(quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997)).

To possess standing, a plaintiff must have suffered an "injury in fact," meaning "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotation marks omitted). In addition, "there must be a causal connection between the injury and the conduct complained of . . . [and] it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560–61 (internal citations and quotation marks omitted).

"The . . . injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Id.* at 578 (quoting *Warth*, 422 U.S. at 500); *see also Massachusetts*, 549 U.S. at 516 ("Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in the judgment))) (internal quotation marks omitted). In cases involving statutory rights, "the particular statute and the rights it conveys [] guide the standing determination." *Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170, 178 (2d Cir. 2012); *see also Hammer v. Sam's East, Inc.*, ___ F.3d ___, 2014 WL 2524534, at *4 & n.3 (8th Cir. June 5, 2014) (noting that "the actual-injury requirement may be satisfied *solely* by the invasion of a legal right that Congress *created*"); *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1212 (10th Cir. 2006) (where a court is "dealing with legal rights created by Congress under the FDCPA . . . the 'injury in fact' analysis for purposes of Article III is directly linked to the

question of whether [the plaintiff] has suffered a cognizable statutory injury"). As the Supreme Court has explained, "[e]ssentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth*, 422 U.S. at 500. For this reason, "the violation of a statutory right is usually a sufficient injury in fact to confer standing." *Robins v. Spokeo, Inc.*, 742 F.3d 409, 412 (9th Cir. 2014).

At the same time, "the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009). Thus, there are limits on Congress's ability to elevate to the status of legally cognizable injuries particular types of harm that were previously not recognized in law. *Lujan*, 504 U.S. at 578. As this court has observed, there are "two constitutional limitations on congressional power to confer standing." *Robins*, 742 F.3d at 413. "First, a plaintiff 'must be among the injured, in the sense that she alleges the defendants violated *her* statutory rights.'" *Id.* (quoting *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 707 (6th Cir. 2009)) (internal quotation marks omitted). "Second, the statutory right at issue must protect against 'individual, rather than collective, harm.'" *Id.* (quoting *Beaudry*, 579 F.3d at 707).

The second limitation poses no problem in this case. The personal interest in not being "the object of a misrepresentation made unlawful [by statute]," *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982), assuredly is an "individual, rather than collective, harm," *Beaudry*, 579 F.3d at 707 (internal quotation marks omitted). The gravamen of Nelson & Kennard's argument, rather, is that Tourgeman is

not truly "among the injured." That is, it contends that Tourgeman has not suffered the "actual" injury required by Article III because he never received any letter that contained the allegedly misleading representations. According to Nelson & Kennard, a consumer who never receives a dunning letter can suffer neither pecuniary nor emotional harm, nor can such a consumer be hindered in deciding how to respond to the effort to collect the debt.

The Supreme Court's decision in *Havens Realty Corp. v. Coleman*, however, makes clear that such pecuniary or emotional harms are not necessary to a finding of injury in fact. In *Havens*, the Court held that an African-American "tester" —who, by posing as an apartment hunter, aimed to ferret out violations of the Fair Housing Act ("FHA") — possessed standing to bring suit based on the defendants' falsely telling her that no apartments in a particular housing complex were available, even though the tester had no intention of actually renting an apartment from the defendant and, indeed, may well have "fully expect[ed] that he would receive false information." 455 U.S. at 374. The Court concluded that the "alleged injury to [the plaintiff's] statutorily created right to truthful housing information" was a cognizable injury in and of itself — regardless of whether the plaintiff actually hoped to reside in the defendant's housing complex — and therefore "the Art. III requirement of injury in fact [was] satisfied." *Id.* at 374 (citing *Warth*, 422 U.S. at 500). The tester plaintiff possessed standing not because she had been "deprived . . . of the benefits that result from living in an integrated community," *id.* at 375, but simply because her "statutorily created right to truthful housing information" had been infringed, *id.* at 374–75.

Similarly, we have held that where a home buyer is referred by her settlement agent to a particular title insurer as a result of a kickback deal between the agent and the insurer, the consumer suffers Article III injury even though she paid no more for the insurance than she otherwise would have. *Edwards v. First Am. Corp.*, 610 F.3d 514, 517–18 (9th Cir. 2010), *cert. granted in part*, 131 S. Ct. 3022 (2011), *cert. dismissed as improvidently granted*, 132 S. Ct. 2536 (2012) (per curiam); *accord Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 762–63 (3d Cir. 2009) (recognizing that because Article III injury can be predicated on the violation of statutory rights, "[a] plaintiff need not demonstrate that he or she suffered actual monetary damages"); *Carter v. Welles-Bowen Realty, Inc.*, 553 F.3d 979, 989 (6th Cir. 2009) ("Just as a violation of the rights of 'testers' to receive 'truthful information' supports standing, so does a violation of the right to receive referrals untainted by conflicts of interest." (quoting *Havens*, 455 U.S. at 373–74)).  More recently, we concluded that an individual had standing to sue a website operator that allegedly had published inaccurate information about him, regardless of whether the plaintiff had suffered any financial or emotional harm as a consequence.  *See Robins*, 742 F.3d at 412–14; *accord Beaudry*, 579 F.3d at 707; *see also In re Zynga Privacy Litig.*, ___ F.3d ___, 2014 WL 1814029, at *5 n.5 (9th Cir. May 8, 2014) (affirming Article III standing based on Facebook user's interest in maintaining the privacy of her online identification and URL information).  In cases involving a variety of other federal statutes, courts regularly have held that the absence of pecuniary loss is no bar to Article III standing, if the plaintiff has alleged a violation of the rights conferred by statute.  *See, e.g.*, *Hammer*, 2014 WL 2524534, at *3–4 (action under Fair and Accurate Credit Transactions Act); *Donoghue*, 696 F.3d at 174–80 (action under section 16(b) of Securities Exchange

Act); *Robey*, 434 F.3d at 1211–12 (action under FDCPA); *DeMando v. Morris*, 206 F.3d 1300, 1303 (9th Cir. 2000) (action under Truth in Lending Act).

Although Tourgeman could not have suffered any pecuniary loss or mental distress as the result of a letter that he did not encounter until months after it was sent — when related litigation was already underway — the injury he claims to have suffered was the violation of his right not to be the target of misleading debt collection communications. The alleged violation of this statutory right — like those rights at issue in *Havens*, *Robins*, and the other cases that we have noted — constitutes a cognizable injury under Article III. And "[w]hen the injury in fact is the violation of a statutory right that we inferred from the existence of a private cause of action, causation and redressability" — the two other elements of standing — "will usually be satisfied." *Robins*, 742 F.3d at 414. Such is the case here. The alleged violation of Tourgeman's statutory rights stems solely from the defendants' having mailed to him their collection letters, and that injury would be redressed by an award of statutory damages, which the FDCPA makes available to prevailing consumers. *See* 15 U.S.C. § 1692k(a)(2) (providing for "additional damages"). We conclude, therefore, that Tourgeman has constitutional standing.

## B. Statutory Standing

Satisfied that Article III of the Constitution would not bar Congress from creating a private cause of action for a consumer in Tourgeman's position, we now turn to ask whether Congress actually has done so in the FDCPA. We

start with the text of the statute.[4]  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387–88 & n.4 (2014); *United States v. Johnson*, 680 F.3d 1140, 1144 (9th Cir. 2012).  The FDCPA provides that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person." 15 U.S.C. § 1692k(a).  And the substantive provision that Tourgeman alleges was violated states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* § 1692e.  The question, then, is whether the "use [of] any false, deceptive, or misleading representation . . . with respect to any person" entails a corollary requirement that the person to whom the representation was addressed actually have received it.

The statute's text imposes no such requirement.  Still, it is not unreasonable for Nelson & Kennard to contend that the very concept of a "representation" contemplates the presence of two parties: the party making the representation and the party to whom it is made.  *See, e.g.*, WEBSTER'S THIRD NEW INT'L DICTIONARY 1926 (1993) (defining "represent" as meaning, *inter alia*, "to set forth or place *before someone* (as by statement, account, or discourse)," and "[to] exhibit (a fact) *to another* mind in language" (emphases added)); BLACK'S LAW DICTIONARY 1415 (9th ed. 2009) (defining "representation" as meaning, *inter alia*, "[a] presentation of fact — either by words or by conduct — made to induce

---

[4] As the Supreme Court recently noted, what the courts have sometimes called "statutory standing" is perhaps better addressed by asking whether Congress has created by a particular statute a cause of action in which a class of plaintiffs is authorized to sue.  *Lexmark*, 134 S. Ct. at 1387–88 & n.4.

*someone* to act . . . [especially] the manifestation *to another* that a fact, including a state of mind, exists" (emphases added)).  But these definitions do not speak to the nature of the intended recipient's role in the transaction, and the statutory text itself is aimed squarely at the debt collector's conduct, rather than at its effect on the consumer.  *See* 15 U.S.C. §§ 1692e & k(a) (proscribing the "*use* [of] any false, deceptive, or misleading representation . . . with respect to any person" (emphasis added)).  A debt collector who addresses a misleading dunning letter to a consumer as a means of collecting that consumer's debt "use[s]" an unlawful practice "with respect to" the consumer, regardless of whether some interceding condition — such as non-receipt of the letter, or the consumer's failure to read it, or the fact that the consumer is savvy enough not to be misled by it — renders the practice ineffective.

The manner in which the majority of courts have applied the FDCPA aligns with this construction of the statute.  To begin with, a consumer possesses a right of action even where the defendant's conduct has not caused him or her to suffer any pecuniary or emotional harm.  *E.g.*, *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1083 (7th Cir. 2013); *Robey*, 434 F.3d at 1212; *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003); *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 780–81 (9th Cir. 1982).  An FDCPA plaintiff need not even have actually been misled or deceived by the debt collector's representation; instead, liability depends on whether the *hypothetical* "least sophisticated debtor" likely would be misled.  *E.g.*, *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 & n.2 (9th Cir. 2011); *Terran v. Kaplan*, 109 F.3d 1428, 1431 (9th Cir. 1997).  This inquiry is objective and is undertaken as a matter of law. *Gonzales*, 660 F.3d at 1061.  In addition, by making available

to prevailing consumers both statutory damages and attorneys' fees, Congress "clearly intended that private enforcement actions would be the primacy enforcement tool of the Act." *Baker*, 677 F.2d at 780–81 (citing elements of the FDCPA's legislative history); *see also Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) ("The FDCPA is a consumer protection statute and was intended to permit, even encourage, attorneys like [plaintiffs' class counsel] to act as private attorney generals to pursue FDCPA claims."); *Gonzales*, 660 F.3d at 1061 (noting that "Congress encouraged private enforcement [of the FDCPA] by permitting aggrieved individuals to bring suit as private attorneys general" (citing *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008))).

These interlocking statutory features demonstrate that Congress intended to achieve its goal of regulating debt collectors' conduct by motivating consumers to bring enforcement actions if they are the targets of unlawful collection efforts. And the Act's broad regulatory purpose is effectuated by measuring the lawfulness of a debt collector's conduct not by its impact on the particular consumer who happens to bring a lawsuit, but rather on its likely effect on the most vulnerable consumers — the hypothetical "least sophisticated debtor" — in the marketplace. *See, e.g.*, *Gonzales*, 660 F.3d at 1061. In addition, "[b]ecause the FDCPA . . . is a remedial statute, it should be construed liberally in favor of the consumer." *Clark v. Capital Credit & Collection Servs. Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006) (quoting *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002)) (omission in original). This rule of construction fortifies our conclusion that a consumer such as Tourgeman, who did not actually receive a dunning letter directed toward

him at the time it was sent, nonetheless may bring an action challenging the lawfulness of that letter under the Act.

For these reasons, Tourgeman has both Article III standing and a statutory cause of action under the FDCPA.[5]

### III.  CLAIMS UNDER THE FDCPA

We turn now to the merits of Tourgeman's claims, which require that we determine whether the defendants' communications were "misleading" under section 1692e of the FDCPA.  Although Tourgeman levels the same basic charge against all defendants — that his original creditor, CIT Online Bank, was falsely identified to be American Investment Bank — there are a few distinctions between the various challenged documents and these differences warrant dividing our separate discussion of them.  We first address the Paragon Way letters, then the complaint drafted by Nelson & Kennard and filed against Tourgeman in California state court, and conclude with the letter sent by Nelson & Kennard.  We exercise de novo review over a grant or denial of summary judgment.  *Evon*, 688 F.3d at 1023–24.  This court also "reviews a district court's interpretation of the FDCPA de novo."  *Id.* at 1024.

---

[5] We also reject Nelson & Kennard's contention that Tourgeman's claims based on the letters are time-barred.  The district court appropriately concluded that "the first time that [Tourgeman] reasonably could have become aware of the allegedly false and misleading representations in Defendants' letters was when his father was served with summons and complaint in the state court lawsuit in October 2007," after which litigation discovery revealed the existence of the collection letters.  *Tourgeman*, 2011 WL 3176453, at *6; *see also Magnum v. Action Collection Serv., Inc.*, 575 F.3d 935, 939–41 (9th Cir. 2009) (holding that discovery rule applies in FDCPA actions).

The FDCPA "comprehensively regulates the conduct of debt collectors," and "is a strict liability statute." *Gonzales*, 660 F.3d at 1060–61; *see also Clark*, 460 F.3d at 1174–77 (concluding that the FDCPA holds debt collectors strictly liable). Section 1692e therefore "broadly prohibits the use of 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Gonzales*, 660 F.3d at 1061 (quoting 15 U.S.C. § 1692e). The section also provides a non-exhaustive list of sixteen practices that violate this general prohibition; Tourgeman relies on three of the subsections: 1692e(2)(A), proscribing the "false representation of the character, amount, or legal status of any debt"; 1692e(3), prohibiting the "false representation or implication that any individual is an attorney or that any communication is from an attorney"; and 1692e(10), forbidding the "use of any false representation or deceptive means to collect or attempt to collect any debt."

"In this circuit, a debt collector's liability under § 1692e of the FDCPA is an issue of law." *Gonzales*, 660 F.3d at 1061. The analysis is objective and "takes into account whether the 'least sophisticated debtor would likely be misled by a communication.'" *Id.* (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010)). "The 'least sophisticated debtor' standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.'" *Id.* (quoting *Terran*, 109 F.3d at 1432). "Most courts agree that although the least sophisticated debtor may be uninformed, naive, and gullible, nonetheless her interpretation of a collection notice cannot be bizarre or unreasonable." *Evon*, 688 F.3d at 1027.

In addition, "[i]n assessing FDCPA liability, we are not concerned with mere technical falsehoods that mislead no

one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." *Donohue*, 592 F.3d at 1034. In other words, a debt collector's false or misleading representation must be "material" in order for it to be actionable under the FDCPA. *Id.* at 1033. "The purpose of the FDCPA, 'to provide information that helps consumers to choose intelligently,' would not be furthered by creating liability as to immaterial information because 'by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect).'" *Id.* (quoting *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757–58 (7th Cir. 2009)). Thus, "false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under [section] 1692e." *Id.*

### A. Paragon Way Letters

Paragon Way mailed three letters to Tourgeman that falsely identified his original creditor as "American Investment Bank, N.A.," when in fact CIT Online Bank originated his loan. The letters also displayed an "Original Account #" that did not match Tourgeman's original CIT loan number. The first two of these letters, however, did include a "Description" line item that stated, "Dell Computer Corporation." The question presented is whether this combination of features — in particular, the letters' misidentification of Tourgeman's original creditor —

rendered these letters materially misleading under section 1692e.[6]

Tourgeman contends that these false statements could lead a consumer to reach any number of incorrect understandings about the nature of the predicament he or she faces. For example, the consumer might be concerned that the erroneous information is indicative of an attempted fraud. Or the consumer might assume that because the letter seeks to collect a debt that evidently does not belong to him, the letter can safely be disregarded. Alternatively, the consumer might be concerned that if he responds to the letter by paying the amount demanded, he will later receive another letter from a different debt collector attempting to collect the same debt. Tourgeman contends that because each of these beliefs about the nature of the situation is just as reasonable as the

---

[6] Tourgeman places little emphasis on the presence in the letters of an incorrect account number. At oral argument, his counsel simply stated that the unfamiliar account number made the letters "doubly confusing." Counsel for Nelson & Kennard, in his argument, maintained that any claim made on the basis of the account number had not been pled in Tourgeman's complaint, and had only been raised on appeal. But the district court clearly considered this factual allegation in its decision on summary judgment. *See Tourgeman*, 2012 WL 3731807, at *3.

In any event, we conclude that the misidentification of the original creditor is independently sufficient to constitute a violation of the Act. Although the incorrect account number certainly compounds the violation, we do not determine whether that particular false statement, standing alone, would be sufficient to violate the FDCPA.

one true understanding, he has been misled or deceived within the meaning of the Act.[7]

Nelson & Kennard maintains that despite the erroneous identification of Tourgeman's original creditor, the references to Dell in the first two Paragon Way letters were sufficient to tip off even the least sophisticated debtor about the subject matter of the collection effort. And a consumer genuinely puzzled by the mention of American Investment Bank, need only have picked up the phone to call for more information or to dispute the debt. Thus, says Nelson & Kennard, because the consumer's ability to intelligently respond to the letters would not have been adversely affected by the incorrect information, the false statements were not "material," and consequently Paragon Way did not violate the Act.

In *Donohue*, we held that a defendant's mislabeling of a portion of a debt as "interest . . . of 12%" — when in fact the sum "included pre-finance charges and interest" — did not violate section 1692e because the statement's falsity "did not undermine Donohue's ability to intelligently choose her action concerning her debt." *Id.* at 1034. We relied on the Seventh Circuit's decision in *Hahn*, which involved comparable facts. *See* 557 F.3d at 757 ("[T]he difference between principal and interest is no more important to the

---

[7] Tourgeman also argues that summary judgment should not have been granted to Collins and Paragon Way in light of deposition testimony given by Walt Collins, the founder and former CEO of Collins Financial Services, in which Mr. Collins opined that the misidentification of Tourgeman's original creditor violated the FDCPA. This line of argument is foreclosed by our precedents, in which we have recognized that "we are not bound by a witness's opinions about the law." *Miller v. Clark Cnty.*, 340 F.3d 959, 963 n.7 (9th Cir. 2003); *see also McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999).

Fair Debt Collection Practices Act than the color of the paper that [the creditor] used."); *see also Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009) ("[Plaintiff] can't win simply by showing that [the debt collector's] use of the term 'principal balance' is false in a technical sense; she has to show that it would mislead the unsophisticated consumer.").

By contrast, in *Lox v. CDA, Ltd.*, 689 F.3d 818 (7th Cir. 2012), the court concluded that the statement that a tribunal could award attorneys' fees payable by the consumer — when, in fact, such an outcome was a legal impossibility — was a material misrepresentation because, for the consumer who believed that were the case, such a fact "would have undoubtedly been a factor in his decision-making process, and very well could have led to a decision to pay a debt that he would have preferred to contest." *Id.* at 827.  And the Sixth Circuit has held that a consumer's allegations that she endured "confusion and delay in trying to contact the proper party concerning payment on her loan and resolution of [her] problem," which allegedly was caused by the defendant's false statement that a particular bank held her mortgage note, sufficiently stated a claim under the court's FDCPA materiality standard.  *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 327–28 (6th Cir. 2012).

We are persuaded that, in the context of debt collection, the identity of a consumer's original creditor is a critical piece of information, and therefore its false identification in a dunning letter would be likely to mislead some consumers in a material way.  Unlike mislabeling portions of a total debt as principal rather than interest — literally false, but meaningful only to the "hypertechnical" reader, *see Wahl*, 556 F.3d at 645 — the factual errors in Paragon Way's letters

to Tourgeman could easily cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort. *See Donohue*, 592 F.3d at 1034 (a false statement violates the FDCPA if it "may frustrate a consumer's ability to intelligently choose his or her response").[8]

The debtor who takes Paragon Way's letters at face value — either because he does not remember the details concerning his financing of a computer bought several years beforehand, or perhaps because he never knew the identity of his original creditor to begin with — might engage in a fruitless attempt to investigate the facts of this non-existent debt, in a responsible effort to determine how to most effectively respond to the collection notice. This debtor might, quite reasonably, contact American Investment Bank to obtain background information so that he can remember what had earlier transpired, or to obtain any records that the bank holds pertaining to his debt so that he can prove he already had paid it off, if he believes such is the case. But, of course, American Investment Bank would have no record of a loan agreement; and the unknown account number certainly is of no help in getting to the bottom of things. Even if the

---

[8] The district court was "not persuaded that the misidentification of the original creditor, or the account number, in this case would 'frustrate a consumer's ability to intelligently choose his or her response,'" because "the least sophisticated debtor would not have recognized the original creditor, or account number, even if they had been correctly identified in the first instance." *Tourgeman*, 2012 WL 3731807, at *5 (quoting *Donohue*, 592 F.3d at 1034). This approach, however, defeats the purpose of the least sophisticated debtor standard, which is to "ensure that the FDCPA protects *all* consumers, the gullible *as well as* the shrewd." *Clark*, 460 F.3d at 1171 (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318–19 (2d Cir. 1993)) (alteration omitted) (emphases added).

consumer eventually finds his way to learning that the letter
referred to the Dell debt he had incurred with CIT Online
Bank, the delay already would have cost him some portion of
the thirty days that the FDCPA grants to consumers before
having to respond to a collection notice, lest the debt collector
be entitled to assume the validity of the debt. *See* 15 U.S.C.
§ 1692g. And such "confusion and delay in trying to contact
the proper party concerning payment on [the] loan" is
precisely the kind of infringement of the consumer's best
interests that the FDCPA seeks to combat. *Wallace*, 683 F.3d
at 327.[9]

By ensuring that consumers are fully and truthfully
apprised of the facts and of their rights, the FDCPA enables
them "to understand, make informed decisions about, and
participate fully and meaningfully in the debt collection
process." *Clark*, 460 F.3d at 1171; *see also Donohue*,
592 F.3d at 1033 ("The purpose of the FDCPA [is] 'to
provide information that helps consumers to choose

---

[9] Debt collectors must not make representations that tend to lead
consumers to forego the valuable rights granted to them by the Act. *See,
e.g.*, *Easterling v. Collecto, Inc.*, 692 F.3d 229, 235 (2d Cir. 2012)
(collection letter violated section 1692e due to its "capacity to discourage
debtors from fully availing themselves of their legal rights"); *Russell v.
Equifax A.R.S.*, 74 F.3d 30, 34–36 (2d Cir. 1996) (collection letters
violated both sections 1692g and 1692e(10) by employing language that
would tend to make consumer "uncertain as to her rights" to enjoy thirty-
day period within which to dispute debt or demand validation from debt
collector); *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225–26
(9th Cir. 1988) (per curiam) (debt collector violated section 1692g by
overshadowing notice of thirty-day period by including language that
"promis[ed] harm to the debtor who waits beyond 10 days").

intelligently.'" (quoting *Hahn*, 557 F.3d at 757–58)).[10] Paragon Way's false representations would likely mislead consumers in a manner that deprives them of their right to enjoy these benefits. We therefore hold that these letters contained materially misleading statements that trigger liability under section 1692e of the Act. Accordingly, the appellant is entitled to judgment on his claims against Paragon Way under subsections 1692e(2) and e(10).

Nelson & Kennard repeatedly suggests that a perplexed consumer could simply place a phone call to the debt collector to clear up any confusion. But for many consumers — particularly those who do not even recognize that they have encountered false information — making such a call likely would not be their first reaction to the letter, nor does the FDCPA require that it be so. As we have previously explained, "consumers are under no obligation to seek explanation of confusing or misleading language in debt collection letters." *Gonzales*, 660 F.3d at 1062 (citing *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004)). Indeed, Nelson & Kennard's argument, taken to its furthest reach, would transform many of the FDCPA's substantive provisions into surplusage, converting any dunning letter bearing a return address and phone number into a

---

[10] Nelson & Kennard may be correct that the FDCPA does not *require* that the original creditor be identified in collection letters sent to consumers — but where a debt collector *has* chosen to identify the original creditor, and has done so inaccurately, the false representation would likely thwart a consumer's ability to freely navigate a course of action in response to the collection notice. Congress's recognition in the FDCPA that this information is important — even if not so essential that debt collectors *must* disclose it without first being asked, *see* 15 U.S.C. § 1692g(a)(5) — supports the conclusion that its false provision could have this type of detrimental impact on the consumer.

communication not misleading by virtue of those features. *See Fields*, 383 F.3d at 566 (noting that the Seventh Circuit has "rejected the proposition that a debt collector could provide incomplete information in a dunning letter so long as it provided a telephone number for the debtor to call"). Interpreting materiality in such a fashion would gut the FDCPA's prohibition of misleading representations, and "[w]e must avoid a construction which renders any language of the enactment superfluous." *Security Pac. Nat'l Bank v. Resolution Trust Corp.*, 63 F.3d 900, 904 (9th Cir. 1995).

## B. State Court Complaint

We next address the complaint prepared by Nelson & Kennard and filed against Tourgeman in California state court, which Nelson & Kennard delivered directly to Tourgeman's father, who then transmitted it to his son in Mexico. *Tourgeman*, 2012 WL 3731807, at *2, *8–9.[11] Because the one material aspect of this complaint is the same as that which renders Paragon Way's letters misleading — namely, the inclusion of erroneous references to American Investment Bank — the preceding discussion applies with equal force to this document. The complaint presented the information in a somewhat different format, however; the body of the complaint twice referred to a loan agreement between American Investment Bank and Tourgeman. Attached to the complaint was a blank exemplar of such an

---

[11] In *Donohue*, this court held that a complaint that is served directly on a consumer qualifies as a "communication" that is subject to the strictures of section 1692e. 592 F.3d at 1031–32. At least one court has gone further and concluded that a complaint that is merely filed, but not actually served, also can give rise to liability under the FDCPA. *Phillips*, 736 F.3d at 1082–83.

agreement between the bank and a Dell Computer customer, which featured the logos of both American Investment Bank and Dell. Although the complaint lacked any reference to the erroneous account number, based on the reasoning of the preceding section of this opinion, we necessarily conclude that Nelson & Kennard violated the Act by transmitting this complaint to Tourgeman.

Furthermore, a consumer could be harmed by a complaint — as opposed to a dunning letter — in ways distinct yet equally problematic as those we have already discussed. For example, the consumer who engages legal counsel might be unable to accurately apprise the lawyer of the relevant circumstances, potentially leading to lost opportunities to settle the debt. And the stakes are undoubtedly higher when the consumer faces the possibility of a default judgment rather than the mere continuation of collection attempts.

## C. Nelson & Kennard Letter

Finally, we come to the letter mailed to Tourgeman by Nelson & Kennard. That letter informed him that the firm's client, Collins Financial Services, "ha[d] forwarded [his] account to this office with instructions that we take appropriate action to effect collection of the above-referenced balances due." The Nelson & Kennard letter did not mention Dell. It did reference "American Investment Bank, N.A.," but, unlike the Paragon Way letters, it did not label the bank as Tourgeman's "original creditor." Rather, both the bank's name and the same incorrect account number that appeared in Paragon's letters were placed in a "Re:" line item atop the body of the letter. There was no explanation as to the meaning or significance of these pieces of information.

Nelson & Kennard argues that the absence of a label informing Tourgeman that American Investment Bank was the original creditor somehow makes the letter less misleading than those sent by Paragon Way, because the original creditor was not "misidentified." On the contrary, Nelson & Kennard's letter gives the least sophisticated debtor even less of a clue as to how to investigate the claim being made against him, making it more likely that the consumer will waste valuable time and suffer confusion in his efforts to formulate a response. Nelson & Kennard also emphasizes that its letter does correctly identify Tourgeman's current creditor — Collins Financial Services — but, in fact, the letter simply states that Collins is the firm's "client." By contrast, Paragon Way's letters clearly describe Collins as Tourgeman's "current creditor." Because the Nelson & Kennard letter does not describe who American Investment Bank purports to be, and as one cannot assume that the least sophisticated debtor understands that the firm's "client" — Collins Financial Services — is the entity to whom he currently owes money, the consumer might very well think that the letter concerns a debt currently owned by American Investment Bank. Such a misunderstanding could further impede the consumer's ability to exercise his rights under the FDCPA.

Nelson & Kennard also argues that because its letter came on the heels of the letters sent by Paragon Way — two of which mentioned Dell Computer Corporation — a consumer in Tourgeman's position would know what the letter concerned and therefore would not be misled by the absence of any reference to Dell. We need not decide whether there may be some circumstances in which it would be appropriate, in determining a dunning letter's tendency to mislead, to consider the consumer's receipt of earlier letters sent by a

different debt collector. As we already have explained, Paragon Way's letters were materially misleading notwithstanding having included references to Dell. The fact that Tourgeman had been sent the misleading Paragon Way letters therefore does not help Nelson & Kennard.

Tourgeman also advances an independent ground for finding that Nelson & Kennard's dunning letter violated the FDCPA. He alleges that the lawyer who signed the Nelson & Kennard letter was not "meaningfully involved" in the evaluation of Tourgeman's case before sending a letter on law firm letterhead. The "meaningful involvement doctrine" — to which this court has once referred in passing, *see Gonzales*, 660 F.3d at 1063, but which we have never squarely adopted — grows out of the language in 15 U.S.C. § 1692e(3), which prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney."[12]

The foundational case is *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993). In *Clomon*, the defendant worked as the part-time general counsel of a debt collection agency, and authorized the agency to send dunning letters bearing his name and a facsimile of his signature — even though he did not personally review either the individual letters or the files of the consumers to whom the letters were sent. *Id.* at 1316. The Second Circuit concluded that the attorney thereby violated subsection 1692e(3) because "the collection letters were not 'from' [the defendant] in any meaningful sense of

---

[12] The concept of "meaningful involvement" is only pertinent to claims brought under subsection 1692e(3), not to subsection e(2) and e(10) claims, because the phrase has developed through courts' construction of the unique language of e(3).

that word." *Id.* at 1320. Driving this conclusion, in part, was the court's finding that the "use of an attorney's signature implies — at least in the absence of language to the contrary — that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent." *Id.* at 1321. This construction of subsection 1692e(3) has since been adopted by four other circuits. *See, e.g.*, *Lesher v. Law Offices of Mitchell N. Kay, P.C.*, 650 F.3d 993, 1003 (3d Cir. 2011); *Kistner v. Law Offices of Michael P. Margelefsky*, 518 F.3d 433, 438–41 (6th Cir. 2008); *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997); *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996). The Seventh Circuit explained the rationale for the doctrine this way: "An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up." *Avila*, 84 F.3d at 229.

The district court granted summary judgment to Nelson & Kennard on Tourgeman's claim under subsection 1692e(3). It assumed that the meaningful involvement doctrine was applicable, *see Tourgeman*, 2012 WL 3731807, at *6, perhaps because in an earlier decision in the case — when the action was before another district judge on Nelson & Kennard's motion to dismiss the complaint — that judge had adopted the doctrine. *See Tourgeman*, 2011 WL 3176453, at *8–9. In ruling on the summary judgment motion, however, the district court found it undisputed that the attorney who signed the collection letters was meaningfully involved, and granted judgment to Nelson & Kennard on the meaningful involvement claim. 2012 WL 3731807, at *6–7.

We need not determine whether to adopt a construction of section 1692e(3) that incorporates a requirement of meaningful involvement by an attorney who sends a dunning

letter.[13]  We have already concluded that Nelson & Kennard violated the FDCPA by including misleading references to American Investment Bank in both its letter to Tourgeman and in the state court complaint it filed against him.  These conclusions are sufficient to warrant both reversal of the judgment granted to Nelson & Kennard and entry of judgment in favor of Tourgeman.  Because "[v]iolation of a single [FDCPA] provision is sufficient to establish liability," *Gonzales*, 660 F.3d at 1064 n.6, we need not decide whether Nelson & Kennard also violated subsection 1692e(3) based on a lack of meaningful attorney involvement.[14]

## IV.  CONCLUSION

For the foregoing reasons, we conclude that the judgment of the district court granting judgment to Collins, Paragon Way, and Nelson & Kennard must be reversed, and that

---

[13] For this reason, we deny the motion of the National Association of Retail Collection Attorneys for leave to file an *amicus curiae* brief in support of the appellees.

[14] The only potential relevance of finding an additional violation could be with respect to calculating the amount of statutory damages to be awarded to Tourgeman.  *See Clark*, 460 F.3d at 1178 (concluding that "the fact that numerous violations of the FDCPA are predicated upon one set of circumstances *should* be considered and that it is best considered during the calculation of damages" (citing 15 U.S.C. § 1692k(a), (b))); *Peter v. GC Servs. L.P.*, 310 F.3d 344, 352 n.5 (5th Cir. 2002).  Should there arise a dispute with respect to damages that implicates a need to decide Tourgeman's claim under 1692e(3), the district court presumably will adhere to the law of the case and apply the meaningful involvement doctrine.  But unlike the district court, we view the evidence to be equivocal as to what the attorney did or did not do before the firm sent the dunning letter; on this record, neither party would be entitled to summary judgment on this claim.

judgment should instead be entered for Tourgeman against Paragon Way and Nelson & Kennard.  We express no view regarding whether Tourgeman is entitled to judgment against Collins itself, as Tourgeman's claims against that entity were based on a theory of vicarious liability that was neither decided by the district court nor briefed on this appeal.  We remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

FARRIS, Circuit Judge, dissenting:

I respectfully dissent.  As I view the record, the trial court got it right.  I would affirm.